[No. 12944.   Department Two. — January 31, 1891.]

F. P. McLENNAN, Administrator, etc., Appellant, v. THE BANK OF CALIFORNIA, Respondent.

New Trial — Failure to File Decision in Time — Directory Statute. — Section 632 of the Code of Civil Procedure, requiring the judge of the trial court to file his decision with the clerk within thirty days after the submission of the cause, is directory merely, and his failure so to do is not ground for a new trial.

Banks — Liability for Note Collected — Payment to Cashier. — A bank is not liable to the payee for money collected upon a note left in the hands of its cashier for collection in his individual capacity, and which it has collected at the cashier's private request, and placed to his individual credit, and paid out to him on his checks drawn against his account as a depositor with the bank.

Id. — Evidence — Books of Bank — Dealings with Customers — Counterclaim. — In an action by the payee of the note to recover the money collected by the bank, the books of the bank showing the original entries of transactions between itself and its customers are admissible in evidence for the bank, for the purpose of showing an alleged indebtedness of the plaintiff to the bank, set up by way of counterclaim.

Id. — Counterclaim Barred by Limitation. — The fact that the counterclaim of the bank was barred by the statute of limitations does not render the books of the bank inadmissible as evidence to show the original indebtedness of the plaintiff to the bank

Id. — Inequitable Demand — Review of Evidence — Declarations of Deceased Cashier — Credibility of Witness. — It appearing from the evidence that the payee of the note had neglected to make any inquiry of the bank respecting its collection, or made any demand for any part of the money collected for six years after the collection, and until after the death of the cashier, when a still larger indebtedness of the payee to the bank had become barred by limitation, and that the relations between the payee of the note and the cashier were of a most friendly, personal character, testimony of the pay e that the deceased cashier had declared to him that the note had been collected by the bank for the payee and placed to the payee's credit will not be sufficient to disturb the findings in favor of the bank, if his testimony, resulting from want of recollection or otherwise, is self-contradictory, and in some of its statements inherently improbable.

Appeal from an order of the Superior Court of the city and county of San Francisco denying a new trial.

The facts are stated in the opinion.

*George B. Merrill,* and *T. I. Bergin,* for Appellant.

*Newlands, Allen & Herrin,* for Respondent.

Foote, C. — This action was brought by Donald Mc-Lennan, now deceased, and was tried, judgment entered, and notice of intention to move for a new trial served and filed during his lifetime. After his death his administrator, the present plaintiff, was substituted, and a new trial refused.

From the order made in the premises the plaintiff appeals.

The action is to recover of the defendant, a banking corporation, the sum of ten thousand dollars and interest. It is alleged in the complaint that on the twenty-seventh day of November, 1869, the Mission and Pacific Woolen Mills, Consolidated, a corporation, made, executed, and duly indorsed and delivered to the plaintiff a certain promissory note for ten thousand dollars; that upon the receipt of that note, the plaintiff deposited it with the defendant, to be collected in due course of banking business; that the note and certain accrued interest thereon were paid by the maker of the note to the defendant on the twenty-sixth day of April, 1870; that afterwards, on the 26th of August, 1875, the defendant closed the doors of its bank, stopped payment, etc., and refused to pay the plaintiff the money collected by it for him.

The defense was, that the note was never received by the bank from the plaintiff for collection, but was given by the plaintiff into the hands of W. C. Ralston, to be collected and the proceeds used by him for his own benefit, and that, in accordance with this, the money was collected by the bank at the request of Ralston, placed to his credit, and paid out to him on his checks drawn against his account as a depositor with the bank.

The statute of limitations was set up, and also certain demands against the plaintiff held by the bank were pleaded by way of set-off to an amount exceeding the

claim of the plaintiff. The court found, in favor of the defendant, "that the plaintiff never deposited the said note of November 27, 1869, with the defendant to be collected; that the plaintiff never deposited said note of November 27, 1869, with the defendant." It further held that the plaintiff's cause of action, if it had been otherwise good against the bank, which it was not, was not barred, but that the cause of action by the plaintiff. on its counter-demands against the defendant was barred by the statute of limitations. So that upon the findings as made, judgment was rendered against the defendent for costs.

The first ground urged for a reversal of the order denying a new trial is, that the court did not give its decision and file it with the clerk *within thirty days* after the cause was submitted for decision, under section 632 of the Code of Civil Procedure.

The provision of the statute in question is directory merely. (*Broad* v. *Murray*, 44 Cal. 228; *McQuillan* v. *Donahue*; 49 Cal. 157; Hayne on New Trial and Appeal, sec. 238, note 13.)

The main ground, as it seems, urged by the appellant for the reversal of the order is, that the trial court misconstrued the evidence given in the cause, and that the findings against the plaintiff are not in accord with such evidence, if properly and legally considered. The only oral evidence in the case introduced by the plaintiff to sustain the contention that the note was placed in the hands of Mr. Ralston, the then cashier of the Bank of California, for collection by the bank, the proceeds to be placed therein to the credit of the plaintiff, was the testimony of Donald McLennan and the witness Tibbey, the latter having been at one time an employee of the bank, but was not at the time he testified. Mr. Ralston, the only other person who might have testified as to the exact nature of the transaction by which he took the note from McLennan for collection, was dead at the time

of the trial. So that whether he took it as cashier of the bank or in his individual capacity must rest mainly, if not entirely, upon whether the emphatic and positive statements made by McLennan and Tibbey ought to have been given full credit by the trial court.

The note, which it is claimed that Ralston collected and had the proceeds placed to his credit in the bank, and drew it out by check, and used it for his own private purposes, was made in renewal of a *second* note, which last had been in the hands of Tibbey, a friend of Mc-Lennan's, to be collected by Tibbey for McLennan. When it became due, Tibbey placed it in another bank for collection, and Colonel Fry, the president of the mill corporation, the maker of the note, was not ready to pay it, and told Mr. Ralston, who was largely interested in the corporation, of the fact of the inability of the corporation at that time to meet the note, and that Tibbey had it for collection. Ralston was, as appears abundantly in the record, a man and a friend in whom McLennan had the utmost confidence, at whose instance the latter had several times given his name on various notes, and had at Ralston's personal request loaned at one time thirty thousand dollars to the mill corporation. In fact, it would appear as if McLennan, on account of the confidence he had in Ralston, and his intimate personal and business relations with him, as shown by McLennan's evidence, if he had been requested to do it, would at any time have intrusted or loaned to Ralston either his name, credit, or money.

Under these existing personal relations between Ralston and McLennan, Mr. Ralston inquired of Tibbey about this second note. He was informed that the note was held, in confidence, as agent, by Tibbey; then Tibbey saw McLennan, who told him to tell Ralston whom the note belonged to. This was done, and an interview occurred between Ralston, Tibbey, and McLennan, by means of which Ralston became possessed of the note,

had it renewed, and placed the renewed note in the bank for collection, as deposited for his own account individually, and used the proceeds personally.

Another circumstance appears in the case in the evidence of McLennan; and that is, that although he says that Ralston told him the money had been collected on the note, and placed to McLennan's credit in the Bank of California, that he never once made any inquiry of any one else about the bank if such was the fact, never made any demand for it for years afterwards, or during Ralston's lifetime, except to Ralston, and never drew a check against it, or made any effort to get it, as is usual in cases when men have money on deposit in banks.

After Ralston's death, and during the temporary suspension of the bank, this action is brought, and when a large alleged indebtedness of McLennan to the bank is barred by the statute of limitations, and his claim, being against a bank, cannot be likewise barred. All these facts were before the trial court.

In addition to certain suspicious facts and circumstances, which time does not admit of mention, it appears in the testimony of McLennan that he first positively and emphatically declared that he had no interest or claim in the third note, and afterwards declared that he had; the reason which he assigns for not claiming this interest in the first instance being as stated by himself, in answer to questions by his counsel, which questions and the answers are: —

"Q. This morning you were asked in regard to the first and second notes, and you said that the third note was not yours. I should like to know if you have any explanation to make about that.

"A. Well, I made a great mistake this morning, because I thought that not having any physical connection in the third note, that it might not belong to me, or it might prejudice my standing in court. I at once saw my mistake, and beg now to correct it. I claim owner-

ship in that note, the same as the other two notes. I claim ownership in any note having any connection with the transaction.

"Q. You also said that you never authorized or ratified the taking up of the third note. What do you mean by that?

"A. Well, I mean to say by that, whatever the bank done in connection or in the shape of an accommodation to the mill, of course it was no doings of mine, any more than the proceeds from any accommodation they might afford the mill. I claim the payment, — claim the money."

From this it seems as if the witness thought himself justified in making his recollection conform to his supposed interests, and that he was ready to and did make what he calls a "mistake" in his own favor as to the statement of a fact or a claim of interest, when to do otherwise, and state the fact or claim correctly, would, as he said, "*prejudice my standing in court.*"

Space forbids us to enumerate all the other instances, either, as claimed, resulting from the want of recollection, or otherwise, where it would seem that the witness caused "intestinal" conflicts in his testimony, or made statements inherently improbable in their nature. But such appears to us to have been the character of his testimony, and under such circumstances we do not see, in view of the decisions of the appellate court of this state, that the trial court was compelled to regard as true his statement as to how Ralston became possessed of the note. (*Crook* v. *Forsyth*, 30 Cal. 662; *Bernal* v. *Wade*, 46 Cal. 667; *Blankman* v. *Vallejo*, 15 Cal. 639–646; *Baker* v. *Firemans Fund Ins. Co.*, 79 Cal. 34–41; *Mogk* v. *Peterson*, 75 Cal. 501.)

Mr. Tibbey's mistakes and corrections also leave it doubtful if his recollection of the facts just as they occurred when Ralston took the note is to be relied on; and besides, the peculiar relations between Ralston and

McLennan, and all the facts and circumstances sur-
rounding the transaction, and the conduct of the plaintiff
afterwards, as above adverted to, might well cause the
trial judge to doubt the correctness of the memory of the
witness.

It is further claimed that the books of the bank show-
ing the alleged indebtedness of the plaintiff, as set up by
the counterclaim, were inadmissible in evidence. The
transactions of a bank relating, in large measure, with
its customers, to the receipt of money from them and the
paying of it out to them on loan or check, it would seem
as if their books showing the original entries of such
transactions are admissible, and competent evidence for
the bank. (Morse on Banks and Banking, 3d ed., sec.
295, note, pp. 510, 511; *Union Bank* v. *Knapp,* 3 Pick.
96, 109; 15 Am. Dec. 181; *Watson* v. *Phœnix Bank,* 8
Met. 217, 220, 221; 41 Am Dec. 500.)

Even if the claim of the defendant was barred by the
statute of limitations, this did not render this evidence
to show the original indebtedness inadmissible, for it
might happen in such a case that the party introducing
it would be able to show facts which would take it out of
the operation of the statute, and after the date of the
claim and its nature are shown, it then becomes a ques-
tion for the court to determine, from all the evidence,
whether such claim is or not enforceable under the stat-
ute.    While a recovery on such claim may be barred,
this does not render proof of the claim in the first
instance incompetent.    Besides, the findings of the
court are, that the claim was barred, hence the plaintiff
is not prejudiced.    The same rule applies to the objec-
tion to the admission in evidence of the promissory note
for $16,841.75, executed by the plaintiff to the defendant.

There are other objections urged to the admission or
exclusion of evidence.    We have given to arguments made
and authorities cited minute and thorough consideration,
and have examined the transcript carefully, but we can-

not see wherein any prejudice could have been suffered by the plaintiff.

The decision of the court was unquestionably correct, and even if some evidence was admitted and other evidence excluded, perhaps improperly, it yet appears that, even then, the evidence unobjected to in the record was unaffected, as that admitted against objection and that excluded was not of sufficient importance to change the result. Perceiving no prejudicial error in the record, we advise that the order appealed from be affirmed.

BELCHER, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the order appealed from is affirmed.

Hearing in Bank denied.