E. P. LYNCH, JOHN J. MEYERS ET AL., APPEL-LANTS, *v.* ANTONIO COVIGLIO ET AL., RESPONDENTS.

1. *Statutory Time for Filing Decision—Directory Merely.*
> Section 3379, Comp. Laws 1888, providing that, "upon a trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision," respecting the time of filing the decision, is directory merely; and a court therefore has the right to file its findings of fact, conclusions of law, and decision after the expiration of the time designated by the statute.

2. *Findings of Fact—Conclusions of Law and Decision—Amendments of.*
> Where, in an action, questions raised in the cross complaint were of equitable cognizance, and amendments to the findings and decision were made at the hearing of the motion for a new trial, when the court yet had jurisdiction of the cause, and the amendments were not prejudicial to the rights of the appellants, the action of the court in making the amendments will not be regarded as reversible error.

3. *Verbal Contract—Specific Performance.*
> Where a claimant of government lands offers to give land to another on condition that the donee shall erect buildings thereon, and the purpose of the donor is the enhancing of the value of his adjoining property, and the donor puts the donee into pos-

session thereof, who then erects buildings in accordance with the oral contract in performance thereof, such contract is thereby taken out of the statute of frauds, and a court of equity will enforce specific performance of the parol agreement on the part of the donor after he has secured the patent for the land.

(No. 914. Decided June 14, 1898.)

Appeal from district court; Third district; A. N. Cherry, Judge.

Ejectment by E. P. Lynch and others against Antonio Coviglio, G. B. Piano, and another. From a judgment for defendant Piano, plaintiffs appeal. *Affirmed.*

*J. M. Denny,* for appellants.

*Wiley L. Brown,* for respondents.

BARTCH, J.:

This is an action in ejectment to recover possession of a certain portion of the Junebug lode mining claim, Camp Floyd mining district, Tooele county, Utah. The portion claimed is described by metes and bounds in the pleadings, and it is admitted that at the time suit was brought, and trial had, the defendants were in the possession thereof. The court on July 14, 1897, rendered a decree and judgment in favor of the defendant G. B. Piano, and this appeal is from the decree and judgment.

The first question which we will consider is whether the court had jurisdiction to render judgment when it did. It appears from the record that the court failed to file its findings of fact, conclusions of law, and decision within 30 days after the cause was submitted; and counsel for the appellants insists that this was error, and that after the

expiration of 30 days from the submission of the case the court had nothing before it which it was authorized, or had jurisdiction to, decide, and relies on section 3379, Comp. Laws Utah 1888, which provides, "Upon a trial of a question of fact by the court, its decision must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision." This section is a verbatim copy of section 632 of the Code of Civil Procedure of California. The supreme court of that state has construed the provision respecting the time of filing the decision as being directory merely. *McLennan* v. *Bank*, 87 Cal. 569; *Broad* v. *Murray*, 44 Cal. 228; *Vermule* v. *Shaw*, 4 Cal. 214. We entertain no doubt of the correctness of this construction, and see no reason to depart therefrom, or to announce a new rule respecting the filing of decisions of questions of fact, which would be at variance with the established practice in this state. A court, therefore, trying a case without a jury, has jurisdiction to file its findings of fact, conclusions of law, and decision after the expiration of the time designated in the statute. It is true, however, that there should be no unnecessary delay in so doing.

It is also insisted for the appellants that the court erred in assuming jurisdiction to amend its findings of fact, conclusions of law, and decree. It appears that the amendments were made at the same time the motion for a new trial was overruled. Such practice respecting findings of fact and judgments, as is indicated by the record in this case, has several times been condemned by this court, and ought no longer to be continued. *Clawson* v. *Wallace* (Utah) 52 Pac. 11; *Fisher* v. *Emerson*, 15 Utah 517. Inasmuch, however, as the questions raised in the cross complaint were of equitable cognizance, and as the amendments were made at the hearing of the motion for a new

trial, when the court yet had jurisdiction of the cause, and as none of the amendments were prejudicial to the rights of the appellants, but all were favorable to them, we are not disposed to regard the action of the court as reversible error. Under these circumstances the granting of a new trial by this court would not be warranted. *Mining Co.* v. *Jennings,* 14 Utah, 221; *Pratalongo* v. *Larco,* 47 Cal. 378; *Wingate* v. *Ferris,* 50 Cal. 105; *Kahn* v. *Smelting Co.,* 102 U. S. 641.

It is further insisted for the appellants that the court erred in holding that the respondent Piano acquired title to the premises in question by virtue of an oral agreement between him and A. N. Butts, who, it appears, was the owner of the Junebug mining claim, of which the land in dispute forms a part, at the time of the making of the alleged agreement. The agreement set up in the cross complaint is to the effect that on September 1, 1893, A. N. Butts, then the owner and holder of the Junebug mining claim,—not yet patented,—in consideration of securing the beginning of a camp or mining town on the Junebug claim, agreed to give Piano that portion of the mining claim in dispute herein, on condition that Piano would erect or cause to be erected certain buildings or improvements thereon. Thereupon, as is alleged, Butts gave Piano possession of that portion of the claim; and, in pursuance of the agreement, Piano began, and afterwards, with the continued consent of Butts, completed four residence buildings thereon, of the value of $1,400, all of which were constructed between September 1, 1893, and January 1, 1895. Afterwards a patent to the Junebug claim was issued to Butts. At the trial the court, among other things, found from the evidence that the agreement was made and entered into substantially as alleged, except that any mineral which might be found under the surface was reserved,

together with the right to carry the same away, and that Butts put Piano into possession of the land in dispute; that Piano's possession was actual, open, and notorious, and known to all the parties to this action; and that Piano, under the contract, made lasting and valuable improvements on the property, and continued in the possession thereof until the trial of this suit. In the conclusions of law the court found that there had been such performance by Piano as to take the contract out of the statute of frauds, and that upon the patent issuing to Butts the title passed to and vested in Piano, subject only to the mineral rights, which remained in the patentee; and the court decreed the title to the land in question to be in Piano, subject to the mineral reservation. It is insisted that these findings and the decree are not supported by the proof. It appears from the evidence, in substance, that about the 1st of September, 1893, Butts, upon Piano being prevented from building upon another mining claim, offered to give him all the ground he wanted for that purpose, and then took him upon the land in question, and pointed it out to him. Piano, it appears, accepted the offer, and immediately commenced building houses upon the land. The witness Piano testified that, when he finished the first house, Butts, upon being asked by the witness how much he wanted for the land, said that he had given it to him, and wanted nothing for it. There is evidence tending to show that the land was given with a view to having a town started; that at the time of the making of the agreement the land had no market value; that afterwards Butts platted the land of the mining claim into lots, which were then included in the Mercur town site; that the improvements of Piano enhanced the value of the surrounding lots or property; and that early in 1895 the lots began to have a selling price at about $50 per lot. The witness Sear-

bourough testified that in August, 1893, Butts proposed to give the witness a lot, if he would go out there and start a town. Respecting the possession and occupancy of Piano, Butts himself testified, as appears from his deposition, as follows: "I understood Piano to be in possession of the lot or lots on which he had houses at the time the plat was made." It also appears that the land in controversy is a part of the Mercur town site; that Butts deeded the town site to the appellants. The co-defendants' claims are based on Piano's title. It would not be profitable to refer to the evidence further in detail, for it is clear that there is ample proof in the record to sustain the findings of facts, conclusions of law, and decree. Doubtless the considerations which induced the donor to part with the land was the making of the improvements on the part of the donee, which would enhance the value of the donor's adjacent property. Therefore, after the improvements have been made, large expenditures incurred, and the contract performed, on the part of the donee, the donor will not, in equity, be heard to say that the contract was within the statute of frauds, and consequently the donee has no title to the land; and the appellants, as grantees of such donor, are in no better position than their grantor. In such case the expenditures and labor of the donee supply a valuable consideration, and the possession and improvements constitute a part performance which avoids the statute of frauds, so that the partly-performed contract may be enforced against the donor. Such enforcement, however, is not based upon the contract itself, for that is covered by the statute. It is based upon the acts of the parties outside of the agreement, which render the refusal of the donor to perform clearly a fraud upon the donee. In a case like the one at bar the enforcement of the partly-performed contract is based on the possession taken, ex-

penditures and improvements made by the donee, and the benefit to the donor by the reason of the enhanced value of his adjacent property because of the performance by the donee. Under such circumstances the donor's refusal to perform is inequitable, and, if permitted, would render the statute of frauds itself an instrument of fraud. "Courts of equity will enforce a specific performance of a contract within the statute, where the parol agreement has been partly carried into execution. The distinct ground upon which courts of equity interfere in cases of this sort is that otherwise one party would be able to practice a fraud upon the other, and it could never be the intention of the statute to enable one party to commit such a fraud with impunity. Indeed, fraud, in all cases, constitutes an answer to the most solemn acts and conveyances; and the objects of the statute are promoted, instead of being obstructed, by such a jurisdiction for discovery and relief. And where one party has executed his part of the agreement, in the confidence that the other party would do the same, it is obvious that, if the latter should refuse, it would be a fraud upon the former to suffer this refusal to work to his prejudice." Story, Eq. Jur. § 759; *Freeman* v. *Freeman*, 43 N. Y. 34; *Stewart* v. *Stewart*, 3 Watts, 253; *Ungley* v. *Ungley*, 4 Ch. Div. 73; *Eckert* v. *Eckert*, 3 Pen. & W. 332; *Malins* v. *Brown*, 4 N. Y. 403; *Syler* v. *Eckhart*, 1 Bin. 378; *Bright* v. *Bright*, 41 Ill. 97; *Lobdell* v. *Lobdell*, 36 N. Y. 327; Pom. Cont. § 130; Pars. Cont. p. 359. The defendants having been in the actual possession and occupancy of the land at the time of the conveyance to the appellants of the town site, which included the land in controversy, such possession and occupancy amounted to actual notice to the appellants of the defendants' rights. *Live-Stock Co.* v. *Dixon*, 10 Utah 334.

A number of other questions were presented, and, while

they have not escaped our notice, still we do not deem it necessary to discuss them. There appears to be no reversible error in the record. The judgment is affirmed.

ZANE, C. J., and MINER, J., concur.