[Civ. No. 5365.   Second Appellate District, Division Two.—November 9, 1926.]

THE CITY OF LOS ANGELES (a Municipal Corporation), Respondent, v. CATHERINE HANNON, Appellant.

[1] EMINENT DOMAIN—DETERMINATION OF VALUATION—DELAY IN ENTRY OF JUDGMENT — APPEAL — REMEDY OF DEFENDANT.—A minute order for judgment is not a judgment; and in this eminent domain proceeding, in which the interlocutory judgment was not entered until about four and one-half years after the court fixed the valuation, the defendant property owner was afforded

1. See 14 Cal. Jur. 866; 15 R. C. L. 570.

no opportunity for an appeal until about four and one-half years after the date of trial, unless prompted to move the trial court or to take other steps to procure an earlier filing and entry of the judgment.

[2] ID.—DELAY IN FILING FINDINGS—NEW TRIAL.—A delay in filing findings and judgment is not one of the grounds for a new trial under section 657 of the Code of Civil Procedure.

[3] ID. — DELAY IN GIVING DECISION — DIRECTORY STATUTE — JURISDICTION.—The requirement of section 632 of the Code of Civil Procedure that the decision of the court when the case is tried without a jury "must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision" is merely directory, and a judgment subsequently entered is not affected by failure to comply with the statute; and the trial court does not lose jurisdiction through procrastination during which there is no objection made nor action taken by either party.

[4] ID.—ABANDONMENT—DELAY IN ENTRY OF JUDGMENT.—Where there has been no express abandonment of a proceeding in eminent domain by the method prescribed by section 1255a of the Code of Civil Procedure, nor an implied abandonment for failure to comply with any of the provisions of section 1251 of said code, mere delay on the part of the parties in requiring the trial court to enter the interlocutory judgment, after said court has fixed the valuation, cannot be said to constitute an implied abandonment.

[5] ID.—JURISDICTION—JUDGMENT—ENHANCEMENT OF VALUE DURING DELAY—NEW TRIAL—APPEAL.—On appeal by defendant from the interlocutory judgment in a proceeding in eminent domain, where no objection is raised to said judgment, and the trial court had jurisdiction to enter it, an affirmance is the logical and legal result, notwithstanding said judgment was not entered until more than four and one-half years after the trial court fixed the valuation of the property and the affidavits presented in support of defendant's motion for a new trial presented the claim that during the delay in entering the judgment the property had greatly enhanced in value.

---

(1) 3 C. J., p. 611, n. 18; 33 C. J., p. 1055, n. 54.   (2) 29 Cyc., p. 773, n. 98, p. 815, n. 12.   (3) 20 C. J., p. 915, n. 55 New; 34 C. J., p. 65, n. 62.   (4) 20 C. J., p. 1084, n. 49, 53.   (5) 20 C. J., p. 1121, n. 29.

2.  See 20 Cal. Jur. 127.
3.  See 24 Cal. Jur. 923.

APPEAL from a judgment of the Superior Court of Los Angeles County. Leslie R. Hewitt, Judge. Affirmed.

The facts are stated in the opinion of the court.

J. Wiseman MacDonald for Appellant.

Jess E. Stephens, City Attorney, and E. H. Delaney, Deputy City Attorney, for Respondent.

CRAIG, J.—The plaintiff and respondent instituted this action in eminent domain on June 10, 1915, to condemn lands of the defendants for the purpose of opening and widening Long Beach Avenue, in the City of Los Angeles. Referees appointed by the superior court filed their report on June 18, 1918, awarding to the appellant the sum of $6,805.20 and $15 costs. To such report appellant filed exceptions, and a hearing before the court below was had on July 20, 1919, on which date the trial court ordered judgment in favor of Catherine Hannon in the sum of $9,640.70 for the land sought to be taken, $4,295.72 as compensation for consequent damages to other property, and costs. No further steps were taken until February 27, 1924, or about four years and seven months after the date on which the court had fixed the valuation. On the date last mentioned an interlocutory judgment, providing for the payment to appellant of the amounts so determined on July 20, 1919, was signed, and it was entered on March 10, 1924. In said judgment it was recited that the exceptions of the defendant Catherine Hannon to the report of the referees were well taken, and should be sustained in part; that the report should be so modified "that the total compensation proper to be paid to the defendant Catherine Hannon as the owner of said parcel of land is the sum of $13,951.42, instead of the sum of $6,820.20, the amount awarded by the referees as total compensation proper to be paid to said defendants."

Appellant moved for a new trial upon grounds 3, 4, 6 and 7 of section 657 of the Code of Civil Procedure. The notice of intention to move for a new trial was accompanied by affidavits of real estate experts which tended to show that the value of the property had greatly increased since the trial of the issues presented by the pleadings. The trial court

denied the motion, stating that it so ruled "for the reason that the grounds on which the motion is really based are not, in my judgment, cognizable by the court in passing on this motion."

It is urged that by the delay in entering judgment the respondent must be held to have abandoned the proceedings, and forfeited its right to the property, and that the trial court lost jurisdiction of the case. The appellant invokes the provisions of section 632 of the Code of Civil Procedure, which provides that the decision of the court when a case is tried without a jury "must be given in writing and filed with the clerk within thirty days after the cause is submitted for decision." It is contended that the rendition and filing of the decree herein was, after such delay, not only in contravention of said section, but in violation of article I, section 14, of the constitution, which latter forbids the taking of property without just compensation.

[1] The law is established in this state that a minute order for judgment is not a judgment. (*Canadian & American Mtg. & Trust Co.* v. *Clarita Land & Investment Co.*, 140 Cal. 672 [74 Pac. 301]; *Cuneo* v. *Cuneo*, 40 Cal. App. 564 [181 Pac. 229]; *United Tax Payers' Co.* v. *San Francisco*, 55 Cal. App. 239 [203 Pac. 120]; *McKannay* v. *McKannay*, 68 Cal. App. 709 [230 Pac. 218]; *Prothero* v. *Superior Court*, 196 Cal. 439 [238 Pac. 357].) Hence, appellant was afforded no opportunity for an appeal until four and one-half years after the date of trial (Code Civ. Proc., sec. 664), unless prompted to move the court below or to take other proper steps to procure an earlier filing and entry of the judgment.

Appellant does not complain that error was committed during the trial, nor in fixing the amount of the award. It is urged that since the property was to all intents and purposes *in custodia legis*, appellant could not convey, encumber, or lease it for a term; that she was compelled to sit by and see it quadruple in value, and was burdened with a corresponding increase in taxes, though precluded from improving the premises for the purpose of increasing their revenue. It is further insisted that although appellant was permitted to retain possession and a limited use of the property, yet the title was suspended by the delay in entering judgment, thus enabling the plaintiff to elect, at its

option, to dismiss its action or to accept the property at any time without payment of interest upon the amount adjudicated.

Respondent ignores this point, and confines its argument principally to the proposition that a new trial was properly denied. [2] It has been decided that a delay in filing findings and judgment is not one of the grounds for a new trial under section 657 of the Code of Civil Procedure. (*Kepfler* v. *Kepfler,* 134 Cal. 205 [66 Pac. 208].) But this is not, nor could it be, an appeal from the order denying a new trial. It is taken from the judgment, which, if by reason of the delay, the trial court lost jurisdiction to enter, would require a reversal.

[3] Prior to its amendment in 1874 section 632 of the Code of Civil Procedure required that decisions be filed within twenty days after submission of the causes, and provided that "unless the decision is filed within that time the action must again be tried." The section, as amended, extended the time to thirty days, omitting the penalty, and has ever since been held merely directory. In so holding it has repeatedly been said that the validity of a judgment subsequently entered is not affected by failure to comply with the statute. (*Oakland First Nat. Bank* v. *Wolff,* 79 Cal. 69 [21 Pac. 551, 748]; *Heinlen* v. *Phillips,* 88 Cal. 557 [26 Pac. 366]; *Rosenthal* v. *McMann,* 93 Cal. 505 [29 Pac. 121]; *Marshall* v. *Taylor,* 97 Cal. 422 [32 Pac. 515]; *Edwards* v. *Hellings,* 103 Cal. 204 [37 Pac. 218]; *Neihaus* v. *Morgan,* 5 Cal. Unrep. 391 [45 Pac. 255]; *Churchill* v. *Louis,* 135 Cal. 608 [67 Pac. 1052]; *Hutchinson* v. *Marshall,* 49 Cal. App. 307 [193 Pac. 164]; *McLennan* v. *Bank of California,* 87 Cal. 569 [25 Pac. 760].)

Nor can it be successfully contended that the trial court lost jurisdiction through procrastination during which there was no objection made nor action taken by either party. In *Brady* v. *Burke,* 90 Cal. 1 [27 Pac. 52], the cause was tried in 1878, and judgment was ordered; an appeal was taken, although the judgment was not entered until 1882, which latter fact was not called to the attention of the supreme court; when the *remittitur* was returned, execution issued, and the property involved was sold. Upon a second appeal it was contended that the superior court had lost jurisdiction of the case, and that the judgment entered four

years after the date of trial, and the execution, were void. In affirming the judgment it was said: "Until the judgment is entered, such court retains complete jurisdiction of the case, of which it cannot be divested by any unauthorized appeal to this court. . . . It follows that the superior court had jurisdiction to enter the judgment of January 7, 1882, and that the execution sale thereunder, under which plaintiff purchased, was not void."

In other jurisdictions having similar statutes limiting the time within which decision must be filed and entered, the rulings have been the same in this respect. In *Toole* v. *Weirick*, 39 Mont. 359 [133 Am. St. Rep. 576, 102 Pac. 590], the following language was used: "If Mrs. Myers had desired action upon the matter at an earlier date, this court was open to her to apply for a writ of mandate to compel the district court to decide the case. California and Utah each has a statute similar to our section 6763 [Mont. Rev. Codes] above, and in each state it has been held that the statute is directory, and the failure of the court to render its decision within the time limited does not deprive the court of jurisdiction to decide it at a later date . . . "

In *Lynch* v. *Coviglio*, 17 Utah, 106 [53 Pac. 983], it was observed that the statute under consideration was a *verbatim* copy of section 632 of the Code of Civil Procedure of California. The court there said: "A court, therefore, trying a case without a jury, has jurisdiction to file its findings of fact, conclusions of law, and decision after the expiration of the time designated by the statute."

To the same effect are *Rawson* v. *Parsons*, 6 Mich. 401; *McCray* v. *Humes*, 116 Ind. 103 [18 N. E. 500]; *Vogle* v. *Grace*, 5 Minn. 294 (Gil. 232); *People* v. *Dodge*, 5 How. Pr. (N. Y.) 47; *McCrady* v. *Jones*, 36 S. C. 136 [15 S. E. 430]; *Body* v. *Jewsen*, 33 Wis. 402; *Cramer* v. *Hanaford*, 53 Wis. 85 [10 N. W. 15].

Appellant relies upon the reasoning employed in *Bensley* v. *Mountain Lake Water Co.*, 13 Cal. 306 [73 Am. Dec. 575], which is claimed to be particularly applicable here. We are unable to discover any principle there stated which can be said to apply to this proceeding, except in the ruling that a plaintiff in a condemnation suit must comply with the terms of the statute, and that it will not be permitted to acquire title or possession under a void judgment. In

the cited case the commissioners' report was filed August 23, 1853; on December 17th of the same year the plaintiff withdrew its deposits and collateral security, and the court made a minute order *dismissing the action;* on December 25, 1856, three years after dismissal, the plaintiff procured an order confirming the report of the commissioners, and on June 29, 1857, a final order for judgment condemning the property and directing that the water company be let into possession was made without notice to the owner of the premises. In 1859 the latter filed a petition reciting that the company was threatening to and would, unless enjoined, take possession, excavate, build embankments, and divert valuable waters of springs and streams. A decree of injunction was granted, which was affirmed upon appeal. No municipal corporation was involved, objection was not made to the commissioners' report, the defendant was given no opportunity to be heard, nor was the appeal taken from the judgment itself. We need not pause to conjecture as to what might have been the reasoning of the supreme court had there been no dismissal and withdrawal of the deposit, and had the judgment, though delayed, been regular in other respects. Since the decision itself has no bearing upon the issues here presented, we must be governed by the rule established by authorities in point, wherein courts of last resort have spoken uniformly.

[4] This condemnation proceeding was instituted under the statutes of 1911, as amended, which contain provisions not enacted at the time of the rendition of the decisions in *Bensley* v. *Mountain etc. Co., supra.* Section 1255a of the Code of Civil Procedure contains a definite provision concerning the method by which condemnation proceedings once instituted may be abandoned. It reads as follows: "Abandonment of Condemnation Proceedings. Plaintiff may abandon the proceedings at any time after filing the complaint and before the expiration of thirty days after final judgment, by serving on defendant and filing in court a written notice of such abandonment; and failure to comply with section one thousand two hundred and fifty-one of this code shall constitute an implied abandonment of the proceedings. Upon such abandonment, express or implied, on motion of defendant, a judgment shall be entered

dismissing the proceeding and awarding the defendant his costs and disbursements, which shall include all necessary expenses incurred . . . ''

Apparently it was the intention of the legislature that an abandonment might be implied from ''failure to comply with section 1251 of this code.'' It is not contended in the instant case that there had been an express abandonment or a failure to comply with any of the provisions of said section 1251. Since the legislature saw fit to make express provision for the manner in which an implied abandonment might take place, under the maxim *expressio unius est exclusio alterius,* the mere delay on the part of the parties in a condemnation suit to take one of the necessary steps, which delay does not constitute a violation of the designated section, cannot be said to constitute an implied abandonment. (Lewis' Sutherland on Statutory Construction, 2d ed., secs. 627–633, and cases cited.)

It may also be observed that in that part of the statute above quoted under which this action is maintained provision is made for the dismissal of the proceeding where an abandonment, express or implied, has occurred, upon motion of the defendant. If in this case she had desired the return of her property, in addition to the remedies which are mentioned elsewhere in this opinion, if an abandonment had actually taken place, she had no need to wait for the court to render its decree, but might at any time have availed herself of the right to move to dismiss. At any rate, the fact that she possessed this as well as other remedies removes in a large measure the force of the claim that a hardship has been worked by reason of the fact that the price of the property condemned has greatly enhanced in value since the filing of the suit. However, if in fact it may have decreased in value, the city, in acquiring the property, would still be bound to pay the amount originally allowed.

[5] Much stress is laid upon provisions of the constitution relating to just compensation and upon ''the Supreme Court's views on fair dealing in eminent domain cases.'' However, from the views expressed herein it becomes apparent that neither the question of adequacy of the award nor that of expediency in such cases can arise. This being an appeal from the judgment, to which no objection is

raised, and the court below having had jurisdiction to enter it, an affirmance is the logical and legal result.

The judgment is affirmed.

Works, P. J., concurred.

THOMPSON, J., Dissenting.—I dissent.

The question is, Did the inaction of the plaintiff municipality for four years and seven months constitute an implied abandonment of the proceedings? It must be conceded that the trial court had not lost jurisdiction by the delay, even though the delay of nearly five years may render the judgment erroneous. In determining the true effect to be given to. this unconscionable, unreasonable, and wholly unjust lapse of time, consideration must be given to the fact, first, that the right of eminent domain provided for by statute is in derogation of common right and therefore must be strictly construed. (*Bensley* v.*Mountain Lake Water Co.,* 13 Cal. 306 [73 Am. Dec. 575]; *Gilmer* v. *Lime Point,* 19 Cal. 47; *Trumpler* v. *Bemerly,* 39 Cal. 490; *Chase* v. *Putnam,* 117 Cal. 368 [49 Pac. 204].)

A careful study of the statutes providing for the exercise of the right of eminent domain clearly indicates an intent on the part of the legislature to prevent any unreasonable delay. For example: In the Improvement Act of 1903, Statutes of 1903, page 376, section 9, it is provided: "the referees shall at once proceed to view the land sought to be condemned," and, again [Stats. 1909, p. 1038], "they shall make and file with the clerk a written report of their findings, and of their necessary expenses within thirty days after the date of their appointment, provided, however, that the time so allowed may be extended upon good cause shown, by the court or judge thereof, but such extension shall not exceed ninety days." It is also well to note that section 10 provides that the compensation and damages shall be deemed to have accrued at the date of the order appointing the referees or of the order setting the cause for trial.

Further light for the proper interpretation to be placed upon the delay is found in section 1251 of the Code of Civil Procedure, providing that upon condemnation payment must be made by the plaintiff within thirty days after

final judgment, except that in case it appears by affidavit that bonds of the state or of public corporations must be sold in order to provide the money, the sum may be paid within one year, and excepting, further, that if the bonds cannot be sold by reason of litigation the time during which such litigation is pending shall not be considered a part of the one-year period. Section 1255a of the Code of Civil Procedure provides that the plaintiff may abandon the proceedings at any time after filing the complaint and before the expiration of thirty days after final judgment by serving on defendant and filing in court a written notice of such abandonment, and "failure to comply with section 1251 of this code shall constitute an implied abandonment and proceeding." It is true that, as suggested in respondent's brief, the abandonment provided for in the Improvement Act of 1903 does not mention an implied abandonment. Nevertheless this cannot be considered as controlling in the premises for the reason that it not only appears from a strict construction, but also it appears to have been the intent of the legislature, that payment for property taken under the statutes providing for eminent domain and the acquisition of property without the consent of the owner and against his will should be paid for within a limited period of time. Under the general procedure, if the trial is delayed for more than one year after the commencement of the action, damages are deemed to have accrued at the date of the trial rather than at the date of the issuance of summons (sec. 1249, Code Civ. Proc.), another clear indication that the legislature contemplated no unreasonable delay in proceedings having for their purpose the acquisition of another's property without his consent.

It is true that in the case of *Bensley* v. *Mountain Lake Water Co.*, 13 Cal. 306 [73 Am. Dec. 575], it appeared that the court had made an order dismissing the action and that the deposits and collateral security had been withdrawn. In this case the commissioner's report was filed on August 23, 1853; the order of dismissal had been entered December 25, 1856, and on June 29, 1857, final order for judgment condemning the property was entered. It is also true that that was an action brought to enjoin the defendant from exercising any right claimed under the judgment. The

court, however, gave little consideration to these facts, but says: "But to steer clear of any disputed facts, the broader question may be made, whether the party, after procuring an order for the condemnation of property, to public use, can lay by for four years without complying at all with those requirements of the proceeding which are of service to the owner, and then without notice give effect to the previous and initiatory acts, through which he deraigns his title. This statutory power of taking property from the owner, without his consent, is one of the most delicate exercises of governmental authority. It is to be watched and guarded with jealous scrutiny. Important as the power may be to the government, the inviolable sanctity, which all free constitutions attach to the rights of property of the citizen, constrains the strict observance of the substantial provisions of law, which are prescribed as modes of the exercise of the power, and to protect it from abuse. All statutory modes of divesting titles are strictly construed, and to be strictly followed. He who relies for a title upon an extraordinary mode of acquisition given him, not by the will of the owner, expressed or implied, but against his will and by the mandate of the law, must show for his warrant a strict compliance with those statutory rules from which his title accrued," and, again, "If we were to hold that by force of these proceedings, in 1853, this company had a right to wait until 1857, and then insist upon giving them effect, we must necessarily hold that the property condemned need not be paid for according to its valuation or real value in 1857, the time when really taken, but may, in effect, be paid for according to its assessed value in 1853, when proceedings were first instituted, and be paid for, not in cash, but on four years' credit, without security. Nay, more, that it might be taken at the mere option of the company, without any sort of obligation on their part to take it, if they chose to decline, as possibly they might, if it deteriorated in value. It would be a unilateral contract, binding one party, but not binding the other; and, translated into plain English, would mean: 'If we (the company) choose, we will take your (Emerson's) land four years hence, by paying for it what is now assessed as its value. You are to keep it for us, and not sell it, for all that time; but if it declines in value

or we do not choose to take it, we will not do so.' No sane man, if left to his volition, would make such a trade, and we think we have shown that the law is not so unjust or arbitrary as to make such a bargain for a citizen when it subjects him to its power''; and again the court says, ''To entitle the company to take the property on those terms they must avail themselves of the privilege within the proper time. The lapse of a reasonable time without availing themselves of the privileges was itself an abandonment of all claim to it. To say the very least, when a year had passed and no offer made, the proceedings were effectually discontinued.'' We think it is well to note that on a petition for a rehearing this statement is made: *''The main principle* upon which we went in the opinion is this: that, after proceedings for a condemnation, which proceedings result in an assessment of damages, the money must, within a reasonable time, be paid or deposited; and if four years intervene before such an act is done, the proceedings must be held to be discontinued; and that a deposit does not mean merely formally putting the money into court and then withdrawing it.'' To the same effect is *Port Townsend Southern R. Co.* v. *Barbare,* 46 Wash. 275 [89 Pac. 710], *Wagner* v. *Bealmear & Son,* 135 Md. 690 [109 Atl. 466], and Nichols on The Power of Eminent Domain, section 342. It might be argued that there is a difference in this case from one in which the time started to run and the delay occurred after the entry of the interlocutory judgment, but in the absence of all statutory regulations the time after the entry of the interlocutoy judgment would be a reasonable time, and the same cogent reasons apply to an unreasonable delay after trial which apply to an unreasonable time after interlocutory judgment. In principle there is no distinction.

Assuming for the purpose of argument contrary to the undisputed fact that the delay was occasioned not by the plaintiff but by the court in its failure to render its decision, it does appear that those things which would constitute an abandonment by the plaintiff, if done by the plaintiff, would, if suffered to be done by the court, constitute error and the court should have declined to sign the findings and interlocutory judgment. The latitude permitted by the directory character of section 632 of the

Code of Civil Procedure should have been limited and controlled by the nature and character of the action here involved. That section must have some effect and where, as here, the character of the action is such and the delay so great that it is wholly inequitable to go forward, it is error for the decision to be entered. If equity would interfere to restrain the assertion of rights founded on the judgment, as was done in *Bensley* v. *Mountain Lake Water Co., supra,* the reasons impelling equity's interference should have restrained the hand of the court in the first instance and impelled it to enter a dismissal if it is found impossible under the authorities to have granted damages as of the date of resetting the cause for trial. The writer is of the opinion, however, that the motion for a new trial waived the right of dismissal if the new trial were granted.

It is plaintiff's position that the defendant acquiesced in the delay and therefore cannot be heard to complain. This position might be tenable had the defendant ever agreed or consented to the disposition of her property, but if she chose to permit the abandonment by lapse of time or otherwise, it seems that the city, upon whom is cast the duty of meeting statutory requirements and equitable compensation, cannot urge her acquiescence as an excuse for its own delay. In fact she may have been more than willing that they delay, but the record does not disclose anything actively done by her to bring about the delay and therefore it does not seem that she should be chargeable in any way therewith.

The affidavits used on the motion for a new trial, without contradiction, show a great increase in value and it is no answer to suggest that the value might have decreased because then the injury would fall where it belonged, upon the slothful.

A petition for a rehearing of this cause was denied by the district court of appeal on December 9, 1926, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 6, 1927.