[Civ. No. 304.   Fifth Dist.   Feb. 19, 1964.]

H. H. LONG et al., Plaintiffs and Appellants, v. CITY OF FRESNO et al., Defendants and Respondents; OSCAR SPANO et al., Interveners and Respondents.

Fullerton & Lang, Frank H. Lang, Jr., and Philip C. Fullerton for Plaintiffs and Appellants.

Robert H. Baida, City Attorney, and Alan D. Davidson, Deputy City Attorney, for Defendants and Respondents.

Dubsick, Helon, Manfredo & Forbes, William E. Forbes, Erskine & Tulley and J. Benton Tulley for Interveners and Respondents.

BROWN (R.M.), J.—This is an appeal from a summary judgment against appellants, holding that an ordinance of the City of Fresno is valid and constitutional and that the city may maintain certain trust funds as provided in the ordinance in question.

Appellants H. H. Long, Joseph Bogosian and Charlotte Bogosian, as residents and taxpayers, filed a first amended complaint against the City of Fresno and Wathen Brothers

Construction Company, a subdivider, defendants and respondents herein, alleging that a particular ordinance which made provision for certain refunds to subdividers who make water main construction contributions under the ordinance set forth therein as one of the exhibits, was and is invalid and void as special legislation because it grants privileges to a limited class of persons, to wit, subdividers, and does not grant the same privileges to other owners of property within the City of Fresno; and in a second cause of action appellants Joseph Bogosian and Charlotte Bogosian, as residents and taxpayers, alleged that they had purchased a lot from defendant Wathen Brothers Construction Company and that said plaintiffs Bogosian are entitled to said refund for said lot in that the cost of said water main was a necessary ingredient of the cost of their home and that such rights of refund were conveyed to them. The plaintiffs-appellants also ask in their prayer that the ordinance be declared invalid and seek a permanent injunction enjoining the city from paying any refunds to the subdivider and a declaration that all refunds applicable to the real property of appellants Bogosian be paid to them and not to the respondent Wathen Brothers Construction Company.

▆▆▆ The pertinent matter now before us for consideration is whether or not certain sections of the charter of the City of Fresno exclude or include the method of financing as provided in ordinance No. 5661.[1] The ordinance in question, No. 5661, provides for the payment on a footage basis by the subdivider to the city of its capital expenditure of extending

---

[1]The relevant sections of the charter provide the following:

"SECTION 1218. MUNICIPALLY OWNED UTILITIES. The Council through the Chief Administrative Officer shall endeavor to make each municipally owned utility financially self-sustaining. After providing for depreciation reserves and amortization of general obligation and revenue bonds issued for such utility and for reasonable accumulation of reserves for improvement and expansion, and for deposits into special funds created to secure revenue bonds issued for such utility, each utility shall apply all annual profits thereafter remaining to rate reductions, subject to any limitations on the application of such profits or on rate reductions contained in any resolution of the Council relating to the issuance of revenue bonds for such utility. No municipally owned utility shall be operated for the benefit of other municipal functions nor be used directly or indirectly as a general revenue-producing agency for the City, but may pay to the City such amounts of money, in lieu of property and other taxes normally placed upon private business enterprises, as the Council may provide by ordinance and may also pay to the City for any lawful purpose such amounts of surplus annual profits as

water mains beyond a certain minimum in the subdivision of the subdivider and for periodic repayments or refunds to be made by the city to the subdivider of 35 per cent of gross water revenues derived from the particular subdivision within a period of 15 years after the payment by the subdivider but not to exceed the amount he has paid, and without any charge for interest.

---

may be permitted by the provisions of any resolution of the Council relating to the issuance of revenue bonds.

"SECTION 1219.  OFF-STREET VEHICULAR PARKING . . .

"SECTION 1220.  AIRPORT FACILITIES . . .

"SECTION 1221.  OTHER REVENUE-PRODUCING UTILITIES.  The City of Fresno shall have power to acquire . . . , construct, establish, improve, extend, maintain, operate, administer, lease, sublease and sublet any revenue-producing utility, including any and all improvements, buildings, systems, plants, works, facilities or undertakings used or useful in

"(i) the obtaining, conserving, treating, and supplying of water for domestic use, irrigation, sanitation, industrial use, fire protection, recreation, or any other public or private uses;

"(ii) . . . garbage . . . ;

"(iii) . . . sewage, . . . ;

"Each such utility shall include all parts thereof, whether now in existence or hereafter constructed or acquired, and all improvements and extensions thereof hereafter acquired, and all lands, easements, rights-of-way, water rights, licenses, franchises, equipment, improvements or facilities whatsoever appurtenant or relating thereto, within or without the City of Fresno to promote the welfare of the citizens and inhabitants thereof.

"Without limiting the generality of the next preceding paragraph, the City shall have power:

"(a) . . . ;

"(b) . . . ;

"(c) To improve any lands acquired by any construction necessary or convenient for the purposes of any such utility;

"(d) To collect fees, rentals or charges to pay all or any part of purchasing, improving, or operating any such utility; and to establish and regulate rentals, rates and charges for all services provided the users of any such utility;

"(e) To establish funds for any such utility and place limitations upon the uses of the money therefrom;

"(f) . . . ;

"(g) To issue revenue bonds . . . ;

"(h) To bind, allocate, pledge and authorize payment of all or any part of the gross revenues of any such utility or of any improvement or extension thereof for periods of years, for the payment of operation and maintenance costs of such utility and principal and interest on all revenue bonds or refunding revenue bonds issued and outstanding until all such bonds have been fully paid;

"(i) To do any and all acts or things necessary or appropriate to carry out the purposes of this section."

It is the respondents' position that the method of financing water mains as provided for in the ordinance in question is expressly allowed by the city charter; that that portion of section 1218 as quoted in footnote 1 which reads ". . . for reasonable accumulation of reserves for improvement and expansion, . . ." does not specifically apply to the capital items referred to; and that the method provided for in the ordinance in question is a reasonable way to accumulate reserves for improvement and expansion.

With the recognized growth of cities in the State of California, it often is necessary and wise for a city to expand its limits. Prospective citizens and purchasers of city property require subdivisions in which to build houses. Water is a requisite to adequate subdivisions and the city itself can oftentimes not afford to pay the entire cost of expansion of water mains to areas which may not successfully attract new home owners. Subdividers, in order to encourage such expansion, must furnish water to prospective home owners, and the ordinance in question allows the subdivider to enhance his potential sales by, at his cost, having the city extend its mains on a front footage basis, hoping that he will sell sufficient property to recover this cost at a rate of 35 per cent thereof, for a period not to exceed 15 years from the date of the water contract. Meanwhile, the city enlarges its tax base. Thus, if there are no water revenues the city gets the main free, with no interest or overhead; and if sufficient revenues, the subdivider gets back part or all of his front footage payments, yet, at the same time the city receives 65 per cent of the revenues to use as it may wish.

Both appellants and respondents have discussed the meaning of the word "reserve," as used in section 1218. According to Webster's New International Dictionary (3d ed. unabridged), "reserve" is defined as ". . . something that is reserved; something kept back or held available (as for future use) ; . . . something reserved or set aside for a particular purpose, use, or reason . . . ; money or its equivalent kept in hand or set apart usually to meet a specified liability or anticipated liabilities. . . ."

Webster also defines "reserve account" as "an account that shows an accrued usually estimated liability (reserve account for income taxes)...."

Whatever the fund is called, whether it is "reserve" or "accumulation," it is still within the power of the city under the charter to set up such an account.

Inasmuch as the city, under its regular powers, can enlarge any water system and pay cash immediately therefor, there is no difference in having this amount advanced by a subdivider and paying him back out of income, except that under a time-payment program usually the full amount would be due. Here, there is an opportunity for the city to obtain the system to its advantage for a lesser amount where there is not sufficient income during the 15-year period.

The appellants have relied on the phrase *expressio unius est exclusio alterius* (expression of one thing is the exclusion of another) in support of their argument that the charter provision does not give the city power to adopt the ordinance in question, and further rely on the following statement from 2 McQuillin, Municipal Corporations, section 9.22, page 532: "... courts will lean to a construction of the ordinance which will uphold it, but such rule has no application where the question is as to the power granted in the charter to pass the ordinance."

However, it can be said that the City of Fresno does have the express power as set forth in the charter, and this is further supported in *City of Grass Valley* v. *Walkinshaw*, 34 Cal.2d 595, where it is said at pages 598-599 [212 P.2d 894]: "Established law governing the exercise of municipal powers under a home rule charter and principles of construction applicable to charter provisions require the rejection of the respondent's contentions. He has overlooked the controlling principle that by accepting the privilege of autonomous rule the city has all powers over municipal affairs, otherwise lawfully exercised, subject only to the clear and explicit limitations and restrictions contained in the charter. The charter operates not as a grant of power, but as an instrument of limitation and restriction on the exercise of power over all municipal affairs which the city is assumed to possess; and the enumeration of powers does not constitute an exclusion or limitation. [Citations.] Thus in respect to municipal affairs the city is not subject to general law except as the charter may provide. [Citations.] As recognized in the West Coast Advertising case [*West Coast Advertising Co.* v. *San Francisco*, 14 Cal.2d 516 (95 P.2d 138)], the levy of taxes for city purposes is a municipal affair; the collection, treatment and disposal of city sewage and the making of contracts therefor are likewise municipal affairs [citation], and neither may be held to be circumscribed except as expressly limited by the charter provisions. All rules of statutory construction as applied to charter provisions [citations] are subordinate

to this controlling principle. The former guide—that municipalities have only the powers conferred and those necessarily incident thereto [citation]—is inapplicable. A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated So guided, reason dictates that the full exercise of the power is permitted except as clearly and explicitly curtailed. Thus in construing the city's charter a restriction on the exercise of municipal power may not be implied.''

(See also *Mefford* v. *City of Tulare*, 102 Cal.App.2d 919, 923 [228 P.2d 847].)

█ Fresno has received its power in municipal affairs directly from the Constitution, article XI, section 6 It further has power under this same section and the charter provisions² to exercise any and all rights, powers and privileges granted or prescribed by any law of the state.

The appellants have cited *City of Salinas* v. *Pacific Tel. & Tel. Co.*, 72 Cal.App.2d 494, 499 [164 P.2d 905], for authority that doubt concerning the existence of municipal powers is resolved against the municipality, but this is not in point for in that case it was held that the state law prevailed concerning the question of whether the city or the state controlled telephone lines on Salinas streets, and not whether the power existed.

█ Where there is no explicit limitation on the water main financing power, there is a clear allowance of the reserve for expansion and improvement procedure. █ The enumeration of the powers in section 1218 and others does not constitute an exclusion or limitation and the rule *expressio unius est exclusio alterius* does not control as ''All rules

---

²Art. II, § 200, Charter of the City of Fresno, reads: ''The City shall have the power to make and enforce all laws and regulations in respect to municipal affairs, subject only to such restrictions and limitations as may be provided in this Charter and in the Constitution of the State of California. It shall also have the power to exercise any and all rights, powers and privileges heretofore or hereafter established, granted or prescribed by any law of the State, by this Charter, or by other lawful authority, or which a municipal corporation might or could exercise under the Constitution and laws of the State of California.

''The enumeration in this Charter of any particular power shall not be held to be exclusive of, or any limitation upon, the generality of the foregoing provisions.''

§ 201 provides: ''The City shall have the power and may act pursuant to any procedure established by any law of the State, unless a different procedure is established by this Charter or by ordinance.''

66

of statutory construction as applied to charter provisions . . . are subordinate to'' the controlling principle that powers may not be ''circumscribed except as expressly limited by the charter provisions.'' Rather, ''A construction in favor of the exercise of the power and against the existence of any limitation or restriction thereon which is not expressly stated in the charter is clearly indicated.'' (*City of Grass Valley* v. *Walkinshaw, supra,* 34 Cal.2d 595, 599.)

■ In 2 McQuillin, Municipal Corporations, section 10.24, at page 635, it is stated: ''Otherwise stated, where the exercise of particular governmental powers may be fairly included in and authorized by general powers granted, the rule *expressio unius est exclusio alterius* is not generally applied to specific powers conferred to exclude powers that serve the purposes for which municipalities are organized where such powers are not inconsistent with other powers conferred or with limitations imposed by the charter or by statute upon the municipal powers.''

■ Paragraph (c) of section 1221 of the charter quoted in footnote 1, does permit the city to ''improve any lands acquired by any construction necessary or convenient for the purposes of any such utility''; paragraph (d) permits the collection of fees, rentals and charges to pay all or any part of purchasing, improving, or operating the utility; paragraph (e) permits the establishment of funds and placing of limitations upon the uses of the money therefrom; and paragraph (i) gives the city power to ''do any and all acts or things necessary or appropriate to carry out the purposes of this section.''

For the foregoing reasons, we have concluded that Fresno City Ordinance No. 5661 does not violate section 1218 of the Fresno City Charter.

The judgment is affirmed.

Conley, P. J., and Stone, J., concurred.