[Civ. No. 34793. First Dist., Div. One. Jan. 15, 1975.]

McDONALD'S SYSTEMS OF CALIFORNIA, INC., Plaintiff and Respondent, v.
BOARD OF PERMIT APPEALS OF THE CITY AND COUNTY OF SAN FRANCISCO,
Defendant and Appellant.

**COUNSEL**

Thomas M. O'Connor, City Attorney, and Philip J. Moscone, Deputy City Attorney, for Defendant and Appellant.

Titchell, Maltzman, Mark, Bass & Ohleyer, Michael L. Ohleyer and Haskell Titchell for Plaintiff and Respondent.

## OPINION

SIMS, J.—The Board of Permit Appeals of the City and County of San Francisco has appealed from a judgment which granted petitioner, the successful applicant for a permit to alter an existing building to accommodate a restaurant, a peremptory writ of mandate ordering the board to set aside its decisions of July 31, 1972, and June 5, 1972, which purported to overrule the issuance of the permit. The trial court found that the board's decision of July 31, 1972, was void for lack of jurisdiction, that there was not substantial evidence in the record from the hearing over which the board had jurisdiction to support the board's decision of June 5, 1972, and that, in the alternative, that earlier decision was vacated by the granting of the petition for the abortive rehearing.

The board does not contend, as it might, that if the rehearing procedure continued beyond the period in which the board could exercise jurisdiction, without a further decision either concurring in or overruling the action of the department, the first decision would stand. (See Code Civ. Proc., § 660; and *Whitley* v. *Superior Court* (1941) 18 Cal.2d 75, 80-82 [113 P.2d 449] [overruled on another issue *Dempsey* v. *Market Street Ry. Co.* (1943) 23 Cal.2d 110, 116-117 (142 P.2d 929)] and cf. text below.) Although the board does not specifically concede that the evidence before it on June 5, 1972, was inadequate as a matter of law to sustain the decision rendered that day, it indirectly concedes such was the case.[1] ▮ Regardless of the reason, the board has presented no argument attacking the trial court's finding that there is not substantial evidence in the record to support the decision of June 5, 1972, and has failed to discuss the evidence elicited at that hearing. Therefore the point is deemed waived and the finding must stand. (*Webster* v. *Board of Dental Examiners* (1941) 17 Cal.2d 534, 543 [110 P.2d 992]; *Title G. & T. Co.* v. *Fraternal Finance Co.* (1934) 220 Cal. 362, 363 [30 P.2d 515]; *Duncan* v. *Ramish* (1904) 142 Cal. 686, 689-690 [76 P. 661]; and see 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 425, pp. 4391-4392.)

The controversy, therefore, revolves about whether the board, because

[1] The board's brief recites: "Since Appellant Board did not cite any of the testimony presented at the June 5, 1972 hearing to the Superior Court in its opposition to Respondent McDonald's Petition it is now estopped from doing so. Therefore, if this Court finds that the forty-day time limit is valid, finds that the said time limit applies to rehearings granted by the Board, and further finds that the said time limit is jurisdictional, then appellant has no basis on which to urge the Court that substantial evidence existed at the June 5, 1972 hearing to support its decision."

of provisions found in the municipal code,[2] was precluded from acting later than 40 days after May 18, 1972, the date an appeal was filed with the board by two interested parties who requested it to overrule the department of public works and to order it to refuse the permit.[3] The board contends that the 40-day time limit found in sections 8 and 14 of article 1 of part III of the municipal code are neither mandatory nor jurisdictional because on the one hand they conflict with the charter provision establishing the board, or, in the alternative, because, in any

[2]The applicable sections found in article 1 of part III of the San Francisco Municipal Code read as follows: "Sec. 8. Appeals to the Board of Permit Appeals shall be taken within ten (10) days from the making or entry of the order or decision from which the appeal is taken by filing a notice of appeal with the Board of Permit Appeals and paying to said Board at such time a filing fee of Ten ($10.00) Dollars. Appellant shall immediately serve a copy thereof upon the department, board, commission, officer or other person from whose action appeal is taken. The notice of appeal shall be in such form as may be provided by the rules of the Board of Permit Appeals. [¶] On the filing of any appeal, the Board of Permit Appeals shall notify in writing the department, board, commission, officer or other person from whose action appeal is taken of such appeal, shall fix the time and place of hearing, which shall be not less than five (5) nor more than fifteen (15) days after the filing of said appeal, and shall act thereon not later than forty (40) days after such filing. [¶] Pending decision by the Board of Permit Appeals, the action from which an appeal is taken of such department, board, commission, officer or other person shall be suspended. . . .

"Sec. 14. Hearing and Decision. The Board of Permit Appeals shall hear the applicant, the permit holder or other interested parties, as well as a representative of the department from whose action the appeal is taken. After said hearing and such further investigations as the Board may deem necessary, but not later than forty (40) days after the filing with it of the first appeal, the Board may concur in the action of the department authorized to issue, transfer or revoke the permit, or may overrule the action of said department and order that the permit be granted, restored, denied, or permitted to be transferred, as the case may be. . . .

"Sec. 16. Rehearings. Rehearings may be had only upon motion of a member of the Board and upon the vote of at least four (4) members thereof."

[3]Section 3.650 of the Charter of the City and County of San Francisco as recodified 1971 (Stats. 1971, p. 4574, at pp. 4649-4650) provides for a board of permit appeals consisting of five members appointed by the mayor. Section 3.651 defines the functions, powers and duties of the board, insofar as applicable here, as follows: "Any applicant for a permit or license who is denied such permit or license by the department authorized to issue same, or whose license or permit is ordered revoked by any department, or any person who deems that his interests or property or that the general public interest will be adversely affected as the result of operations authorized by or under any permit or license granted or issued by any department, may appeal to the board of permit appeals. Such board shall hear the applicant, the permit-holder, or other interested parties, as well as the head or representative of the department issuing or refusing to issue such license or permit, or ordering the revocation of same. After such hearing and such further investigation as the board may deem necessary, it may concur in the action of the department authorized to issue such license or permit, or, by the vote of four members, may overrule the action of such department and order that the permit or license be granted, restored or refused." (*Id.*, p. 4650.) Similar provisions were contained in section 39 of the charter as adopted in 1931 (Stats. 1931, p. 2978, at pp. 3001-3002.)

event, they do not apply to a rehearing authorized by section 16. The applicant, with some semblance of authority in support,[4] insists that the provisions of the municipal code are valid, and that they require final action by the board, including any action on rehearing, not later than 40 days after the appeal is filed.

It is concluded on the facts and the applicable law that the provisions of the municipal code are not invalid because of an alleged conflict with the charter provisions, that the 40-day time limitation although mandatory does not serve to divest the board of jurisdiction when it has granted a timely request for rehearing, that such an interpretation is consistent and reconcilable with pronouncements in prior decisions, and that under the facts of this case there was no abuse of discretion in continuing the rehearing as was done. The judgment must be reversed, and since the trial court never determined whether the order of July 31, 1972, which overruled the approval of the permit, was sustained by sufficient evidence, the matter is remanded for such a determination.

The permit in question was issued May 17, 1972. It is admitted and the court found that an appeal was filed May 18, 1972, requesting the board to overrule the issuance of the permit. A hearing was held on June 5, 1972, and at the conclusion of the hearing the issuance of the permit was overruled by the vote of four of the five members present.

On June 14, 1972, the applicant requested the board to grant it a rehearing.[5] Applicant's letter reads in part, "We respectfully request that

---

[4]The amended notice of intended decision of the trial court recites, "The Board of Permit Appeals *must* enter its *final* order not later than 40 days after the filing with it of the first appeal. Sections 8 and 14 of part III, Article I, Municipal Code; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals,* 66 C.2d 34, 41-2 (1967). In determining what is meant by a 'final order,' the Supreme Court has concluded that a granting of a rehearing by the Board of Permit Appeals represents 'not the reopening of a matter once closed but simply the exercise of a *continuing jurisdiction* incident to its *final* determination of the case, . . .' *Lindell Co.* v. *Board of Permit Appeals,* 23 Ca.2d 303, 317 (1943)."

[5]The rules of the Board of Permit Appeals, of which this court may take judicial notice in these proceedings (see Evid. Code, §§ 452 subd. (b) and 200), provide in pertinent part:

"ARTICLE V - PROCEDURE . . . Section 6. Rehearings. Written requests for rehearing must be filed within ten days from the date of the decision in the matter concerning which the rehearing is sought. Such rehearing request may be filed only by principals in the appeal. [¶] Except in extraordinary cases, and to prevent manifest injustice, motions for rehearing shall not be made by the board except upon the following conditions: [¶] (a) The applicant for the rehearing shall submit a written

this petition be considered by the full membership of the Board at a meeting duly called and that the rehearing be conducted before the full membership of the Board."[6] There was no meeting of the board on June 19, 1972, and the matter would ordinarily have been calendared for June 26. The board's answer and return to the petition for mandate alleges "that on or about June 23, 1972 petitioner [applicant] asked the Executive Secretary of respondent [the board] to continue said request for rehearing to July 10, 1972 . . . ." The findings recite "it is admitted by respondent [the board] that on or about June 23, 1972, it requested a continuance of the rehearing until July 10, 1972." In the absence of any replication or proof in the record to the contrary the allegations of the answer and return must be accepted as true. (Code Civ. Proc., § 1091; *Franklin* v. *Municipal Court* (1972) 26 Cal.App.3d 884, 891 [103 Cal.Rptr. 354].) It is assumed the recital in the findings is a clerical error in the designation of the party responsible.

The minutes of the board for July 10, 1972 (see fn. 6 above) recite: "Request for rehearing on Appeal 6410 was granted, rehearing scheduled for July 17." It does not appear whether or not there was any appearance by applicant. In any event the matter was called for hearing on July 17, 1972, and the following entry appears in the Minutes: "Appeal No. 6410 was on calendar for rehearing today. Joe Belardi and Harry Mahari spoke against the proposed McDonald's restaurant. The following persons appeared in favor of the permit: Attorney Michael Ohleyer and Robert Devine representing McDonald's, Russel Kyle, Becky Schattler, Ray Lisader, architect William Abend, Mrs. Willie Glover and Gene Chase. Bud Johnson of the Laborers Union and Orville Luster also spoke. The matter stands submitted, and this appeal was continued for consultation with the City Attorney. This appeal will

request stating succinctly the grounds upon which such rehearing is requested. [¶] (b) If new evidence be relied upon as a ground for rehearing, the application shall show: [¶] 1. The nature and character of the new evidence; [¶] 2. The names of the witnesses and/or a description of the documents to be produced; [¶] 3. Why the evidence was not produced at the original hearing. Failure to exercise due diligence to produce the evidence at the previous hearing shall be deemed grounds for denial of the petition. [¶] All presentations for requests for rehearing shall be in writing, and it shall be the general practice of the board that no verbal testimony shall be received when such request for rehearing is considered by the board."

These rules were adverted to and reviewed in *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303 at pages 317-319 [144 P.2d 4].

[6]This court on its own motion has augmented the record to include a copy of the applicant's request for rehearing, and copies of pertinent minutes of the board. (See Cal. Rules of Court, rule 12(a).)

be on Calendar for a ruling before the full five-man Board." A review of the record of that hearing reveals that no objection was interposed to the board's proceeding at that time by the attorney for the applicant or anyone else. The attorney presented a consultants' study which showed that there would be no serious vehicular traffic increases as a result of the proposed restaurant operation, and pictures of the neighborhood. He referred to the architects' sketch of the building as altered, and he presented petitions in favor of the restaurant development and a booklet describing the proposed operation. He fully argued the merit of applicant's position and presented the witnesses from the district in favor of the application. Because a question had arisen as to whether the operation as planned would comply with offstreet parking requirements of the planning code, the president of the board announced, ". . . we'll take it under submission and ask for a City Attorney's opinion. This is a consensus of three against two. We'll proceed with that understanding." The attorney for the applicant voiced no objection, and proceeded to introduce the applicant's architect as a witness. After the board had heard from applicant's manager, a representative of the planning department, and another witness in favor of the permit, the applicant's attorney advised the president of the board that he had no other witnesses and he was prepared to submit the matter. At the conclusion of the hearing applicant's attorney acknowledged that he understood the matter was being referred to the city attorney and he expressed a misgiving that this matter could be determined the following Monday.[7]

On July 24, 1972, no reply had been received from the city attorney. On July 31 the city attorney addressed a letter to the board which concluded, ". . . I am unable to state, as a matter of law, that it will have

---

[7]The transcript reflects the following colloquy:

"PRESIDENT HARVEY: The matter is submitted.

MR. SIGGINS: [Executive Director of the Board] Continued to another five-man board?

MR. OHLEYER: [applicant's attorney] May I understand the issue that is going to the City Attorney?

PRESIDENT HARVEY: Their right to have granted this permit under the circumstances that it is issued, is it not?

MR. OHLEYER: All right.

MR. BELARDI: [a protestant] And it will come back to the five-man Board? If any one of you people are missing, that will not come for a decision?

COMMISSIONER ELIASER: That is correct.

MR. OHLEYER: I don't know whether that is possible by next Monday.

MR. SIGGINS: It would be up to the City Attorney.

PRESIDENT HARVEY: If he can give us a decision by next Monday. It's conceivable that this will be on next Monday so Mr. Boudoures [a commissioner] can be here."

exceeded its jurisdiction if it votes to overrule the issuance of a permit." The minutes of the board reflect: "Further hearing was held on Appeal *6410,* Attorney Michael Ohleyer and architect William Abend spoke for the permit holder, and Joseph Belardi appeared in opposition to the permit. After discussion of the City Attorney's opinion and consideration of all other circumstances, the board voted 4 to 1 to overrule the granting of this permit." The record of this hearing contains no objection to the jurisdiction of the board. After preliminary remarks the attorney for the applicant addressed the board as follows: "Mr. President, I would add this, that it is my understand [*sic*] from a reading of the transcript that the matter was submitted according to your statement, except for further hearing as to the Opinion of the City Attorney. [¶] A good deal of evidence went in and that is what I would like to speak to at this point." He thereafter argued that the provisions of the planning code upon which the protestants relied did not apply and presented applicant's architect as a witness. The four to one vote to overrule the issuance of the permit concluded the hearing.

I

The powers conferred on the board of permit appeals by the provisions now found in section 3.651 of the Charter of the City and County of San Francisco (fn. 3 above) have often been reviewed by the courts.[8] In *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303 [144 P.2d 4], the court after reviewing the charter provisions and the ordinance sections which are involved in this case (see fns. 2 and 3 above) stated: "As so constituted the Board of Permit Appeals in its appellate jurisdiction, like the Central Permit Bureau in its original consideration of the case, is an administrative tribunal empowered to exercise full discretion in passing upon the matter as submitted for

---

[8]See *Broadway, Laguna etc. Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 767, 772-773 [59 Cal.Rptr. 146, 427 P.2d 810]; *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34, 38, fn. 8 and accompanying text [56 Cal.Rptr. 672, 423 P.2d 824]; *City & County of S. F.* v. *Superior Court* (1959) 53 Cal.2d 236, 247-249 [1 Cal.Rptr. 158, 347 P.2d 294]; *Lindell Co.* v. *Board of Permit Appeals* (1943) 23 Cal.2d 303, 313-315 [144 P.2d 4]; *Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611, 618-619 [114 Cal.Rptr. 404]; *San Francisco Planning etc. Assn.* v. *Central Permit Bureau* (1973) 30 Cal.App.3d 920, 928-929 [106 Cal.Rptr. 670]; *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 395 [100 Cal.Rptr. 223]; *Luxor Cab Co.* v. *Cahill* (1971) 21 Cal.App.3d 551, 556 [98 Cal.Rptr. 576]; *Cow Hollow Improvement Club* v. *Board of Permit Appeals* (1966) 245 Cal.App.2d 160, 169 [53 Cal.Rptr. 610]; *Iscoff* v. *Police Commission* (1963) 222 Cal.App.2d 395, 409 [35 Cal.Rptr. 189]; and *Board of Permit Appeals* v. *Central Permit Bureau* (1960) 186 Cal.App.2d 633, 639-640 [9 Cal.Rptr. 83].

decision. Indicative of such respective freedom of function is the observation that neither the San Francisco Charter nor related sections of the Municipal Code governing permit procedure provide for the making of any findings of fact by the Central Permit Bureau; nor is there any provision anywhere for the statement in writing of the reasons of the bureau or the board for granting or denying a permit. Moreover, the above quotation from section 39 of the charter clearly contemplates a *full* hearing of the case brought before the Board of Permit Appeals, where after considering the matter on its merits as presented by the applicant, the 'head or representative of the department' in vindication of the result reached at the initial hearing, and the interested parties therein, said board is authorized to make final disposition of the application for the permit." (23 Cal.2d at pp. 313-314.) The court concluded, "In the present case, the Board of Permit Appeals, invested by charter provision and related municipal ordinances with complete power to hear and determine the entire controversy, was free to draw its own conclusions from the conflicting evidence before it and, in the exercise of its independent judgment in the matter, affirm or overrule the action of the Central Permit Bureau." (23 Cal.2d at p. 315.)

The board contends that because of these broad powers and the charter[9] mandate to make "such further investigations as the board may deem necessary" (see fn. 3 above), any attempt by the board of supervisors to limit the time within which the board may act is invalid. In *Marculescu* v. *City Planning Com.* (1935) 7 Cal.App.2d 371 [46 P.2d 308], the court stated: "The charter of a municipality is its constitution.

---

[9]"It is now established by a line of decisions of the courts of this state that a city which has availed itself of the provisions of the Constitution as amended in 1914 has full control over its municipal affairs unaffected by general laws on the same subject-matters, and that it has such control whether or not its charter specifically provides for the particular power sought to be exercised, so long as the power is exercised within the limitations or restrictions placed in the charter. [Citations.] . . . [¶] The foregoing cited cases leave no doubt that such a charter is no longer a grant of powers, but is rather an instrument which accepts the privilege granted by the Constitution of complete autonomous rule with respect to municipal affairs, and which otherwise serves merely to specify the limitations and restrictions upon the exercise of the powers so granted and accepted. Therefore any such power not expressly forbidden may be exercised by the municipality, and any limitations upon its exercise are those only which have been specified in the charter." (*West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 521-522 [95 P.2d 138]. See also *City of Glendale* v. *Trondsen* (1957) 48 Cal.2d 93, 98-99 [308 P.2d 1]; *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 598-599 [212 P.2d 894]; *Lindell Co.* v. *Board of Permit Appeals, supra,* 23 Cal.2d 303, 310; *Long* v. *City of Fresno* (1964) 225 Cal.App.2d 59, 65-66 [36 Cal.Rptr. 886]; and *Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 13 [309 P.2d 481].)

[Citations.] Any ordinance passed by a municipal corporation within the scope of the authority expressly conferred on it has the same force within its corporate limits as a statute passed by the legislature has throughout the state. [Citations.] To be valid, an ordinance must harmonize with the charter. [Citation.] An ordinance can no more change or limit the effect of the charter than a statute can modify or supersede a provision of the state Constitution. [Citation.] The board of supervisors in establishing a procedure could not deprive a property owner of a right given by the charter. [Citations.]" (7 Cal.App.2d at pp. 373-374. See also *Hartford Acc. etc. Co.* v. *City of Tulare* (1947) 30 Cal.2d 832, 835-836 [186 P.2d 121]; *City of Placerville* v. *Wilcox* (1868) 35 Cal. 21, 25; *City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 401 [100 Cal.Rptr. 223]; *Luxor Cab Co.* v. *Cahill* (1971) 21 Cal.App.3d 551, 556-557 [98 Cal.Rptr. 576]; *Currieri* v. *City of Roseville* (1970) 4 Cal.App.3d 997, 1001 and 1003 [84 Cal.Rptr. 615]; and *Acton* v. *Henderson* (1957) 150 Cal.App.2d 1, 13 [309 P.2d 481].)

Before construing section 3.651 as a limitation on the power of the board of supervisors to provide procedural rules for the board of permit appeals it is necessary to examine other provisions of the charter. Section 1.101 confers broad rights and powers on the city and county and vests the exercise of those rights and powers in the board of supervisors.[10] Section 2.101 reiterates the powers of the board of supervisors.[11] "Under settled rules of statutory interpretation, these several sections must be construed together, giving effect and meaning so far as possible to all parts thereof, with the purpose of harmonizing them and effectuating the legislative intention as therein expressed. [Citations.]"

[10]Charter section 1.101 provides in pertinent part as follows: ". . . [¶] The city and county may make and enforce all laws, ordinances and regulations necessary, convenient or incidental to the exercise of all rights and powers in respect to its affairs, officers and employees, and shall have all rights and powers appropriate to a county, a city, and a city and county, subject only to the restrictions and limitations provided in this charter . . . . The specification or enumeration in this charter of particular powers shall not be exclusive. The exercise of all rights and powers of the city and county when not prescribed in this charter shall be as provided by ordinance or resolution of the board of supervisors." (Stats. 1971, p. 4592.)

[11]Section 2.101 reads in part, "The powers of the city and county, except the powers reserved to the people or delegated to other officials, boards or commissions by this charter, shall be vested in the board of supervisors and shall be exercised as provided in this charter. [¶] The exercise of all rights and powers of the city and county when not prescribed in this charter shall be as provided by ordinance or resolution of the board of supervisors. . . . The board of supervisors may, by ordinance, confer on any officer, board or commission such other and additional powers as the board may deem advisable." (Stats. 1971, pp. 4593-4594.)

(*Hanley* v. *Murphy* (1953) 40 Cal.2d 572, 576 [255 P.2d 1]. See also *City of Grass Valley* v. *Walkinshaw* (1949) 34 Cal.2d 595, 601 [212 P.2d 894]; and *Acton* v. *Henderson, supra,* 150 Cal.App.2d 1, 14-17.)

■ It is concluded that the board of supervisors has power to provide procedural rules for the board of permit appeals by ordinance so long as those rules do not of necessity curb the charter powers of the latter board. ■ As construed below (part II), the code provisions (see fn. 2 above) are not repugnant to powers granted the board of permit appeals by section 3.651 (fn. 3 above). The provisions of the code are a valid exercise of the powers of the legislative body.

That conclusion is supported by the following principle: "Where ordinances or by-laws have been enacted pursuant to competent authority they will be supported by every reasonable intendment, and reasonable doubts as to their validity will be resolved in their favor. Courts are bound to uphold municipal ordinances and by-laws unless they manifestly transcend the powers of the enacting body. [Citations.]" (*Glass* v. *City of Fresno* (1936) 17 Cal.App.2d 555, 560 [62 P.2d 765]. See also *Griswold* v. *County of San Diego* (1973) 32 Cal.App.3d 56, 65-66 [107 Cal.Rptr. 845]; *Porter* v. *City of Riverside* (1968) 261 Cal.App.2d 832, 836-837 [68 Cal.Rptr. 313]; and *Acton* v. *Henderson, supra,* 150 Cal.App.2d 1, 14.)

The power of the board to grant a rehearing (see fn. 2, § 16) was reviewed in *Lindell Co.* v. *Board of Permit Appeals, supra.* In that case the court observed: ". . . the petitioner maintains that the board having considered at its original hearing and passed upon all the related questions of fact . . . said board was without authority to review such contested issues and revoke its prior determination of the case." (23 Cal.2d at p. 316.) The court distinguished precedents which dealt with administrative boards which had no power to grant a rehearing, and concluded: "Such situation is totally unlike the instant case as disclosed by the record herein, where the rehearing by the Board of Permit Appeals represented not the reopening of a matter once closed but simply the exercise of a *continuing jurisdiction* incident to its *final* determination of the case. [I]n pursuance of section 16 of the San Francisco Municipal Code, part III, article 1, supra. [¶] Said section 16, as above quoted, *expressly authorizes a rehearing* upon motion of a member of the board and the vote of at least four (of the five) members thereof. This ordinance provision is wholly consistent with the broad

discretion conferred upon the board in passing upon a case on appeal under authority of section 39 of the San Francisco Charter, *supra,* providing that after 'hearing and *such further investigation as the board may deem necessary* it may concur in the action of the department authorized to issue . . . [the] permit, or, by the vote of four members, may overrule the action of such department and order that the permit . . . be granted, restored, or refused.' " (*Id.,* at p. 317.)

No constitutional challenge appears in the case last cited. Nevertheless, the fact that the board has acted in conformance with the construction of its powers as so enunciated is a factor in support of the municipal code provisions, at least insofar as section 16 is concerned. (See *City of Grass Valley* v. *Walkinshaw, supra,* 34 Cal.2d 595, 601-602.)

■ The board, despite this long practice now suggests that the provisions of section 3.500 of the charter[12] impliedly indicate that only the board of permit appeals may prescribe rules governing its procedure, and that the board of supervisors is limited to arranging for the posting and publication of such rules. This argument must be rejected for several reasons.

In the first place since the charter is an instrument of limitations and restrictions only, the rule *expressio unius est exclusio alterius* would not operate as contended by the board. (*West Coast Adver. Co.* v. *San Francisco* (1939) 14 Cal.2d 516, 525 [95 P.2d 138]. See also *City of Glendale* v. *Trondsen,* (1957) 48 Cal.2d 93, 100-101 [308 P.2d 1]; *Long* v. *City of Fresno* (1964) 225 Cal.App.2d 59, 66 [36 Cal.Rptr. 886]; and generally cases cited in fn. 9 above.)

Secondly, section 3.501 of the charter expressly contemplates legislation in support of the action of administrative boards created by the charter. It provides in pertinent part, "The head of any department

---

[12]Charter section 3.500 provides in pertinent part: "Each board and commission appointed by the mayor, or otherwise provided by this charter, shall have powers and duties as follows: [¶] (a) To prescribe reasonable rules and regulations not inconsistent with this charter for the conduct of its affairs, for the distribution and performance of its business, for the conduct and government of its officers and employees, and for the administration, custody and protection of property under its control and books, records and papers appertaining to its affairs. The board of supervisors, by ordinance, may provide that rules and regulations of any board or commission, or general orders of any department head issued by authority of any board or commission that are of general public concern shall be published or posted." (Stats. 1971, p. 4609.)

[which includes "the chief executive appointed by each board"], through the chief administrative officer or the board or commission in charge thereof shall recommend to the board of supervisors such ordinances as may be required to carry out the powers vested and the duties imposed, . . ."

Finally it should be noted that the board is in no position to attack the validity of the rules found in the legislation adopted by the board of supervisors as part of the municipal code. In the exercise of its rule-making power the board of permit appeals has expressly provided in article V dealing with "Procedure" (see fn. 5 above), "Section 2. Method of appeal shall be as set forth in the San Francisco Municipal Code, section 8 through 16 and sections 30 and 31."

The board's contention that the provisions of the municipal code are invalid because they conflict with the charter are rejected.

## II

In *Russian Hill Improvement Assn.* v. *Board of Permit Appeals* (1967) 66 Cal.2d 34 [56 Cal.Rptr. 672, 423 P.2d 824], the court was concerned with the time at which the issuance of a permit became final in order to determine whether or not its legality could be affected by legislation which became effective subsequent to the time of the application for the permit. The court held that "a permit is not 'lawfully granted' until all administrative action with respect to the permit application has been completed, . . ." and that "the Board of Permit Appeals in its *de novo* review is bound to apply the zoning ordinances in effect at the time of its final decision, not those in force at the time of preliminary proceedings before any subordinate agency." (66 Cal.2d at pp. 43, 46.)

The applicant contended that the permit should be tested by the law in effect when the appropriate department approved the application because the rule adopted by the Supreme Court would encourage repeated petitions for rehearing before the board of permit appeals by those who wish to postpone the granting of a permit until a new ordinance has become operative. The court answered, "This argument relies upon defendants' unsupported assertion that the Board of Permit Appeals is empowered to grant rehearings without limitation as to time. In point of fact, the Board of Permit Appeals possesses no such authority.

Sections 8 and 14 of part III, article 1, of the Municipal Code both provide that the Board of Permit Appeals must enter its *final* order not later than 40 days after the filing with it of the first appeal." (*Id.,* at pp. 41-42, fn. omitted, italics added.) It again stated that applicant's argument "erroneously assumes that repeated petitions for [a] rehearing could indefinitely postpone the effective date of a valid building permit; yet the Municipal Code precludes that possibility by fixing the date when a *final* order must be entered." (*Id.,* at p. 46, italics added.)

Applicant urges and the trial court assumed that the foregoing statement requiring a finding that the board lost jurisdiction after the expiration of 40 days from the date the appeal was filed in this case. It is acknowledged that in *Russian Hill* the ordinance became effective March 23, between March 19, the date of the issuance of the permit, and the expiration of the 10-day period to file an appeal. The protestant's appeal was filed March 25, determined in favor of the applicant on April 20, and redetermined with the same result on May 4, the 39th day after the filing of the appeal, following an application for rehearing filed April 28. (*Id.,* p. 37.) There was therefore no occasion to rule on a situation where an ordinance might become effective later than 40 days after the filing of an appeal which had not been disposed of by concurrence in or overruling of the action of the issuing department.[13]

"It is elementary that the language used in any opinion is to be understood in the light of the facts and the issue then before the court. [Citation.]" (*McDowell & Craig* v. *City of Santa Fe Springs* (1960) 54 Cal.2d 33, 37 [4 Cal.Rptr. 176, 351 P.2d 344]. See also *Ginns* v. *Savage* (1964) 61 Cal.2d 520, 524, fn. 2 [39 Cal.Rptr. 377, 393 P.2d 689].) Parenthetically it may be noted that in each of the cited cases the court

[13]It is suggested that even if dictum the quoted statements should be deemed controlling for the following reasons: The statements here concurred in by an almost unanimous court, with McComb, J., concurring in the judgment. (*Adams* v. *Seaman* (1890), 82 Cal. 636, 639 [23 P. 53]); they are supported by the reasoning of the opinion (*Granger* v. *Sherriff* (1901) 133 Cal. 416, 417 [65 P. 873]); and the language was responsive to an argument presented by counsel (*Paley* v. *Superior Court* (1955) 137 Cal.App.2d 450, 460 [290 P.2d 617]; see also, generally, 6 Witkin, *op. cit.,* Appeal, § 678, pp. 4591-4592.) Another reason for adapting the Supreme Court's view in the *Russian Hill* case is on the theory of legislative approval. *Russian Hill* was decided in February 1967, and it may be assumed that the San Francisco Board of Supervisors was aware of the decision. It may be further assumed that the board of supervisors, by its failure to amend the section, has approved the decision as a statement of legislative intent. (*People* v. *Hallner* (1954) 43 Cal.2d 715, 719 [277 P.2d 393].) Because of principles set forth in the text these reasons are not deemed controlling.

was concerned with issues fixing a certain time for acts, and in each rejected statements from prior decision which proved inapplicable in the light of other principles.

The court in *Russian Hill,* by its reference to *Lindell Co.* v. *Board of Permit Appeals, supra,* indicated it was aware that the pertinent ordinances and rules provided for a rehearing. Its reference to *"final* order" of the board was a gratuitous extension of the provisions of the municipal code. Those provisions, sections 8 and 14, direct action by the board not later than 40 days after the filing of the appeal. They do not, however, designate such action as *"final,"* nor do they designate any penalty or the consequences of a failure to so act. Section 16 authorizes a rehearing and so therefore indicates that further action may be taken. For the reasons set forth in part III below, which were not considered by the court in *Russian Hill,* the provisions of the municipal code, although mandatory in the sense of directing action by the board, do not serve to divest it of jurisdiction when it properly has granted a rehearing as provided by the charter, and takes timely action thereafter.

The construction given the charter, ordinance and rules by application of the principles as enunciated in this decision do no violence to the reasoning of *Russian Hill.* There is no license to apply for or to permit successive rehearings. As pointed out above an aggrieved party may move for dismissal and seek an extraordinary writ if the hearings by the board extend beyond the statutory period, as herein interpreted, without reasonable cause.

The extension of the principle that rehearings may not be granted without limitation as to time, into a ruling that the board has no jurisdiction to act more than 40 days after the filing of the application, not only does violence to the provisions of the municipal code and the rules of the board which permit rehearings, but also would permit the applicant to take advantage of his own opportuning in order to obtain a favorable result. (See part IV below.)

In *Ursino* v. *Superior Court* (1974) 39 Cal.App.3d 611 [114 Cal.Rptr. 404], this court impliedly acknowledged that the 40-day limitation could not deprive the court of jurisdiction when there was good cause for an extension; in that case, the nonexistence of sufficient commissioners to act to overrule. It was only necessary to so determine, and, no other good cause having been shown for an extension, the period for action was

extended by the period in which no such number of commissioners had been appointed and qualified. (See 39 Cal.App.3d 611, 618-622.)

The applicant now relies on language in that opinion which conflicts with the principles set forth in part II above. (*Id.,* pp. 618-619.) In *Ursino* no issue was raised concerning the power to grant a rehearing as recognized in section 16 of the municipal code. The language "that any purported determination by the Board after the 40-day period would be in excess of the Board's jurisdiction and void" (*id.,* p. 619) must be read in the light of that fact. It was recognized that even where a statute absolutely fixes the time within which an act is to be done, the act may be done at a later time if, during the existence of the prescribed time, the time has been extended by an order made for that purpose under authority of law. (*Id.*) As is evident from the facts of this case (see part IV below) there was such an authorized extension here. For the purposes of this case it is not necessary to attempt to further reconcile or modify *Ursino* to accord with the principles set forth in part III below.

## III

In this case the original action was taken within 40 days after the application was filed, and complied with the limitation prescribed by sections 8 and 14 of the municipal code. (See fn. 4 above.) The disappointed permittee filed a timely request for rehearing under the rules of the board. (See fn. 5 above.) The board acted on the request at the earliest possible time, four votes being required. The time, 25 days, was reasonable, was requested by the applicant for rehearing, who otherwise was faced with the loss of his potential permit, and was within 40 days. The final decision also came within a reasonable time, 21 days, after the rehearing was granted, was at a time to which the applicant for rehearing had consented it be continued, and was within 40 days.

Sections 8 and 14 must be read in connection with section 16, which confers a right to a rehearing. Just as the charter provisions should be harmonized together, the sections of the municipal code should be construed together so as to maintain the integrity of all three provisions. (See *Cal. Drive-In Restaurant Assn.* v. *Clark* (1943) 22 Cal.2d 287, 292 [140 P.2d 657, 147 A.L.R. 1028]; *Sacramento Newspaper Guild* v. *Sacramento County Bd. of Suprs.* (1968) 263 Cal.App.2d 41, 54-55 [69 Cal.Rptr. 480]; *People* v. *Vassar* (1962) 207 Cal.App.2d 318, 322-323 [24 Cal.Rptr. 481]; and *Acton* v. *Henderson, supra,* 150 Cal.App.2d 1, 14.)

In *Lindell Co.* v. *Board of Permit Appeals, supra,* the court after upholding the validity of the ordinance and rules providing for a rehearing observed, "The pertinent municipal charter and ordinance provisions above detailed give the board the power so to avail itself of the opportunity to undo and correct any error in judgment it deems it may have made as the result of a misconception of the merits of the appeal." (23 Cal.2d at p. 320.) In response to the objection that the application for rehearing failed to set forth why allegedly newly discovered evidence had not been produced at the original hearing, the court stated, ". . . in considering the effect of such omitted matter, it must be remembered that the board, under authority of the municipal charter and related ordinance provisions, is expressly empowered to grant rehearings without limitation as to the grounds thereof. Such broad power to reconsider should not be interpreted with too much refinement, nor should it be hedged about with subtle technicalities so as to hamper the just disposition of cases by the board. A rule of procedure, adopted for the guidance and convenience of both the administrative tribunal and the litigants and designed to facilitate the dispatch of business by such tribunal, must receive an interpretation commensurate with its purpose. Accordingly, a mere formal deficiency in a timely-filed application as is here concerned would not operate to deprive the board of its lawful power to rehear the proceeding upon its merits." (23 Cal.2d at pp. 318-319.)

The foregoing comments went to the contents of the application and not to the timeliness of the ruling made therein. Significantly, however, that ruling was in fact made more than 40 days after one of two applications which were considered in the *Lindell Co.* case were filed.[14] It is not unreasonable to infer that in the light of the last quoted views of that court, any objection to the time at which the decision following rehearing was rendered would have met the same fate as the objections to the substance of the petition for rehearing.

[14]The opinion recites that the protestants filed an appeal from the issuance of 27 building permits on August 4, 1943, the appeal was heard on August 11, 1943, and on September 1, 1943 the board of permit appeals gave its decision concurring in the issuance of the permits. A petition for rehearing was filed September 4, 1943. A hearing on this petition was held September 15, 1943, 42 days after the filing of the appeal, and the decision reversing the prior order and overruling the issuance of the permits was not rendered until a week later. A new petition protesting four additional permits was filed September 10, 1943 and heard and decided with the rehearing with respect to the 27 permits. (See 23 Cal.2d at pp. 309-310.) Those proceedings could not serve to prolong the time to act under the original proceedings under the theory advanc d by the applicant and adhered to by the trial court in this case.

In that case the court concluded, "This holding as to the board's continuing jurisdiction in this matter does not impair the efficacy of the general principle that action by an administrative board, when the authoritative law intends it to be final, may not thereafter be revoked. The only question to be determined is when action becomes final. That is in every case a question dependent for its answer upon the scheme of the law by which power is conferred. Here it appears that finality is not reached while the Board of Permit Appeals, in the exercise of its discretion, has authority to grant a rehearing and arrive at a different conclusion as the result of a re-examination of the merits of the case." (23 Cal.2d at p. 323.)

The general rule is stated as follows: "Where the statutes do not fix a time limit within which a hearing must be held, the only time restriction is that the hearing must be held within a reasonable time, and the governing board will not lose jurisdiction to hold a hearing unless there has been an unreasonable delay. (*Steen* v. *City of Los Angeles,* 31 Cal.2d 542, 545-547 . . . ; *Pearson* v. *County of Los Angeles,* 49 Cal.2d 523, 539-540 . . .)" (*Horner* v. *Board of Trustees* (1964) 61 Cal.2d 79, 86 [37 Cal.Rptr. 185, 389 P.2d 713]. Cf. *Ward* v. *Fremont Unified Sch. Dist.* (1969) 276 Cal.App.2d 313, 318-322 [80 Cal.Rptr. 815].)

Since the rehearing was granted within 25 days after it was filed, and the final determination was made within 21 days after the rehearing was granted, and both times were reasonable under the circumstances, it is unnecessary to determine whether the 40-day limitation applied to each of those actions of the board, or, if so, whether, as a mandatory provision, that limitation creates a right to have the pending matter dismissed, or divests the board of all jurisdiction and power to act.[15]

---

[15]In *Garrison* v. *Rourke* (1948) 32 Cal.2d 430 [196 P.2d 884] [overruled on another issue *Keane* v. *Smith* (1971) 4 Cal.3d 932, 939 (95 Cal.Rptr. 197, 485 P.2d 261)], it was contended that the trial court lost jurisdiction to enter a judgment in favor of the contestant because the court did not file its findings of fact and conclusions of law "within ten days after the submission" of the case as prescribed by former section 8556 [now § 20086] of the Elections Code. The court ruled as follows: "Section 5 of Article VI of the Constitution of this state [citation] and article 3, chapter 2, division 10 (§§ 8550-8557) of the Elections Code, vest in the superior court jurisdiction to hear and determine election contests, and to confirm or annul a contested election, or to declare that some other person has been elected. The jurisdiction thus vested may not lightly be deemed to have been destroyed. The intent to divest the court of jurisdiction by time requirements is not read into the statute unless that result is expressly provided or otherwise clearly intended. The consequence or penalty for the failure of the court to file findings of fact and conclusions of law within the designated period was not included in the statute. The defendant does not present a case where such a result ensued in the

## IV

When the foregoing principles are applied to the facts of this case it is clear that the board had power and jurisdiction to rule on the matter before it on July 31, 1972.

The decision which was adverse to the successful applicant for a permit was rendered June 5, 1972, only 18 days after the appeal was filed by the protesting interested parties. On June 14, the applicant filed its request for a rehearing. The matter would ordinarily have been calendared before the board on June 26, 39 days following the filing of the appeal, and at a time at which the board had jurisdiction to act. It was at the request of the applicant that action on the application for rehearing was continued to July 10, a date more than 40 days after the protestant's appeal, but 26 days after the applicant's request for a rehearing. On that date the applicant did not object to the board's right

---

absence of the express requirement. That it was not to occur unless expressly provided is demonstrated by the fact that when the Legislature wished to indicate that intent it adopted the simple expedient of including an express provision to that effect. (See Code Civ. Proc., § 660, limiting the time for passing upon a motion for new trial; Code Civ. Proc., § 657, limiting the time when the court may file an order specifying insufficiency of the evidence as a ground for granting new trial.) The case of *Thomas* v. *Driscoll*, 42 Cal.App.2d 23 . . . involved section 657 of the Code of Civil Procedure, and the correct rule is indicated in that decision as follows: A time limitation for the court's action in a matter subject to its determination is not mandatory (regardless of the mandatory nature of the language), unless a consequence or penalty is provided for failure to do the act within the time commanded." (*Id.*, at pp. 435-436. See *Steen* v. *City of Los Angeles* (1948) 31 Cal.2d 542, 545-546 [190 P.2d 937]; and *Cook* v. *Civil Service Commission* (1960) 178 Cal.App.2d 118, 128-130 [2 Cal.Rptr. 836] [tardy action by civil service commission]; *Farmers etc. Nat. Bank* v. *Peterson* (1936) 5 Cal.2d 601, 607 [55 P.2d 867]; and *City of Los Angeles* v. *Hannon* (1926) 79 Cal.App. 669, 673-674 [251 P. 247] [failure of court to file decision within time prescribed by Code of Civil Procedure]; *Buswell* v. *Board of Supervisors* (1897) 116 Cal. 351, 354 [48 P. 226] [equalization of taxes after time prescribed, but within time which could have been but was not intended]; *Janet* v. *Industrial Acc. Com.* (1965) 238 Cal.App.2d 491, 497 [47 Cal.Rptr. 829]; *Liberty Mut. Ins. Co.* v. *Ind. Acc. Com.* (1964) 231 Cal.App.2d 501, 508-510 [42 Cal.Rptr. 58]; *Peak* v. *Industrial Acc. Com.* (1947) 82 Cal.App.2d 926, 932 [187 P.2d 905]; and *Coombs* v. *Industrial Accident Com.* (1926) 76 Cal.App. 565, 569 [245 P. 445] [failure to make award under Workmens' Compensation Act within 30 days after the case is submitted]; *Anderson* v. *Pittenger* (1961) 197 Cal.App.2d 188, 193-194 [17 Cal.Rptr. 54] [city council's tardy denial of a variance on review of planning commission's grant]; *Koehn* v. *State Board of Equalization* (1958) 166 Cal.App.2d 109, 118-119 [333 P.2d 125] [failure of A.B.C. Appeals Board to enter order within time prescribed]; *Barry* v. *Contractors State License Board* (1948) 85 Cal.App.2d 600, 607 [193 P.2d 979] [failure of hearing officer to enter decision within time prescribed]; and *Bernardo* v. *Rue* (1914) 26 Cal.App. 108, 110 [146 P. 79] [failure to file findings and judgment in election contest within time prescribed].)

to determine whether or not to grant a rehearing. Equitably he should have been estopped to do so, but, in any event, under the charter and code provision the issue, to grant or deny a rehearing, had only been before the board for 26 days. On July 10, the matter was reopened by a grant of a rehearing. The hearing on July 17, and the continuance to July 31, to secure the city attorney's opinion were all without objection from the now appealing applicant, and fell within 40 days of the time of the grant of a rehearing.

It is true that 40 days after the request for a rehearing expired on July 24, 1972. It is unnecessary to determine in this case whether such a computation would govern when the party who filed the original appeal seeks a rehearing of a decision upholding the administrative ruling. In this case the successful applicant became the loser on appeal. In order to get further consideration he became an appellant, but his standing as such did not mature until the board acted on July 10. It then had 40 days to reconsider the merits.

Applicant claims that his application for rehearing was only filed to lay the foundation for further court action by exhausting all administrative remedies. (See *Lynn* v. *Duckel* (1956) 46 Cal.2d 845, 848-850 [299 P.2d 236].) No authority is cited for the proposition that an application for rehearing is necessary as a condition precedent to review of an adverse decision of an administrative board. It must be assumed that the applicant also entertained an expectation that further review might secure concurrence in the departmental action which had approved the permit which had been wrested from its grasp by the original ruling of the board. The fact that the rehearing gave the protestants an opportunity to bolster their case is unfortunate, but is not a factor which deprived the court of jurisdiction under the other circumstances of the case.

## V

There remains for consideration the disposition to be made on the merits of the case. The board recognizes that, if it had jurisdiction, the key question is whether there is substantial evidence in the record to sustain its order of July 31, 1972, in which it overruled the departmental action granting the permit. (Cf. fn. 1 above with respect to the order of June 5, 1972.) For some reason, although there was a full hearing before the board, it states that the trial court erred in not remanding the matter

to the board for reconsideration. (See, e.g., *Fascination, Inc.* v. *Hoover* (1952) 39 Cal.2d 260, 268 and 271 [246 P.2d 656]; *Cason* v. *Glass Bottle Blowers Assn.* (1951) 37 Cal.2d 134, 137 [231 P.2d 6, 21 A.L.R.2d 1387]; *Steen* v. *City of Los Angeles* (1948) 31 Cal.2d 542, 548 [190 P.2d 937]; and *Koehn* v. *State Board of Equalization* (1958) 166 Cal.App.2d 109, 119-120 [333 P.2d 125].) It is the trial court, not the board, which has failed to review the evidence.

In *Strumsky* v. *San Diego County Employees Retirement Assn.* (1974) 11 Cal.3d 28 [112 Cal.Rptr. 805, 520 P.2d 29], the court restated the rule of review of administrative action to apply to both local agencies and state agencies of local jurisdiction, or state agencies of legislative origin having statewide jurisdiction, as follows: "If the order or decision of the agency substantially affects a fundamental vested right, the trial court in determining under section 1094.5 whether there has been an abuse of discretion because the findings are not supported by the evidence, must exercise its independent judgment on the evidence and find an abuse of discretion if the findings are not supported by the weight of the evidence. If, on the other hand, the order or decision does not substantially affect a fundamental vested right, the trial court's inquiry will be limited to a determination of whether or not the findings are supported by substantial evidence in the light of the whole record." (11 Cal.3d at p. 32.)

The board asserts, without contradiction by applicant, that since there could be no fundamental vested right to the building permit until final action by the board, the latter test is applicable. It contends that there is sufficient evidence in the light of the whole record to support the denial of the permit because the plans for the altered building reflected that there would be less parking area than was required by the city planning code for the building area involved and the use proposed, and that the permit was erroneously issued in violation of the zoning restrictions for the area. It also asserts that there was conflicting evidence as to whether the alteration would create a traffic problem, violate the urban design plans and be detrimental to the existing neighborhood. The applicant claims that the foregoing contentions are specious, and that the record as a whole shows that the alteration as planned and as approved by the department of public works complies with all city ordinances.

It is true that the department of public works under the guise of granting a building permit cannot evade a restriction imposed by the zoning ordinance which can only be modified by a formal variance (see

*City and County of San Francisco* v. *Padilla* (1972) 23 Cal.App.3d 388, 399-402 [100 Cal.Rptr. 223]). On the other hand zoning and building laws cannot be used unqualifiedly to restrict competition. (See *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 159-160 [96 Cal.Rptr. 484]; and *Van Sicklen* v. *Browne* (1971) 15 Cal.App.3d 122, 127-128 [92 Cal.Rptr. 786].) ■ If the finding of the board of permit appeals was totally unsupported by the evidence, its action would be in excess of, or in abuse of, its discretion, and its decision overruling the permit should be set aside. (*Rogers* v. *Retirement Board* (1952) 109 Cal.App.2d 751, 757 [241 P.2d 611].)

Since the trial court never passed upon the sufficiency of the evidence, the matter must be reversed and remanded for further proceedings before that court.

The judgment is reversed.

Molinari, P. J., concurred.

**ELKINGTON, J.**—I dissent.

The ordinance with which we are concerned, i.e., municipal code, article 1, part III, sections 8, 14 and 16, requires the board of permit appeals to act on an appeal filed with that board "not later than forty (40) days after such filing." This means, we are authoritatively informed, that "the Board of Permit Appeals must enter its *final order* not later than 40 days after the filing with it of the first appeal." (*Russian Hill Improvement Assn.* v. *Board of Permit Appeals*, 66 Cal.2d 34, 42 [56 Cal.Rptr. 672, 423 P.2d 824]; italics added.) Although the board of permit appeals may grant a rehearing, the rehearing procedure must be concluded before expiration of the 40-day period; for the ordinance "precludes that possibility [of extending that time] by fixing the date when a *final order* must be entered." (*Id.*, p. 46; italics added.) We closely followed this authority in *Ursino* v. *Superior Court*, 39 Cal.App.3d 611 [114 Cal.Rptr. 404].

It is undoubtedly true that the ordinance sets up an unusual, and perhaps unworkable, procedure in requiring completion of both the initial hearing and decision, and the rehearing proceedings, within the 40-day period. But that does not permit us to impress our own views of a

proper rehearing procedure on the parties; and thus provide for one 40-day period, then an indefinite time period within which a rehearing may be sought, and then yet another 40-day period during which the board must act on rehearing. The court's decision takes on the nature of municipal legislation, rather than interpretation of the ordinance. It is said not to be the province of a court "to put in something that is not in a statute or to take out something that is there." (13 Cal.Jur.3d, Constitutional Law, § 103, p. 197.)

The appropriate forum for the enactment of more reasonable rules for the board of permit appeals is that body or the San Francisco Board of Supervisors, not the courts.

I would hold that the rehearing procedure of the board of permit appeals, to be valid, must be concluded within 40 days after the filing with it of the initial *appeal,* and remand the cause to the superior court for further proceedings in accordance with that view.

Respondent's petition for a hearing by the Supreme Court was denied March 12, 1975.